502 P.2d 1355

**The STATE of Arizona, Appellee,**

v.

**Lindy Gene ALDRIDGE, Appellant.**

**No. 2387.**

Supreme Court of Arizona, In Banc.

Nov. 20, 1972.

Gary K. Nelson, Atty. Gen., by William P. Dixon, Asst. Atty. Gen., Phoenix, for appellee.

John V. Riggs, Tempe, for appellant.

CAMERON, Vice Chief Justice.

This is an appeal from a jury verdict and judgment of guilty to the crime of voluntary manslaughter, § 13–456, subsec. A, par. 1 A.R.S., while armed with a gun, § 13–457, subsec. B A.R.S., and from a sentence of not less than five nor more than eight years thereon.

We are called upon to answer the following questions on appeal:

1. Was it error to allow a police officer to testify who had not been previously endorsed as a witness?

2. Was it error to admit testimony of defendant's statements to police officers after the prosecution failed to produce such statements?

3. Was it error to fail to produce the statements of the defendant to Jerilyn Bush even though she did not testify as to those statements?

The facts necessary for a determination of the matter on appeal are as follows. On 7 December 1970, the deceased, Richard Hyde, and Lloyd Stevens arrived at Bernie's Bar on South Central Avenue in Phoenix, Arizona, at approximately 8:30 p. m. They met with defendant who was acquainted with both Hyde and Stevens. After drinking and shooting pool, the defendant and Hyde got into an argument and Hyde threatened to kill the defendant with a pool cue. The defendant left the bar, got into his camper truck and started the engine. Hyde came up to the defendant's vehicle, opened the righthand door, and was shot by the defendant. The defendant contends that Hyde had something in his hand which he thought was a gun, and because of Hyde's reputation of violence he acted in self-defense. The defendant immediately called the police and upon the arrival of the police the defendant surrendered his gun.

Prior to the trial, the defendant's attorney moved that the court order the County Attorney to provide him with any evidence concerning the dangerous and violent character of Richard Ray Hyde which would substantiate defendant's right of self-defense. On the second day of the trial, after the selection of the jury and the opening statements but before the taking of testimony, the attorney for the defendant moved for the production of statements by prosecuting witnesses, the police, and the defendant.

The motion was granted as to some of the statements and the attorney for the State complied with the order of the court for the production of said statements. As to other statements the record is not clear as to what the court ordered and it is the failure of the State to provide these statements that defendant claims as error.

## THE UNENDORSED WITNESS

Officer Woodhead was not endorsed as a witness as required by Rule 153 of the Rules of Criminal Procedure, 17 A.R.S. On Friday of the trial the State requested a hearing in chambers outside the presence of the jury at which time Officer Woodhead testified and a tape recording of defendant's telephone call to the police after the shooting was heard. The court ruled the tape could be played before the jury. On the following Monday, the 26th of April when Officer Woodhead was called, the defendant objected claiming the officer had not been previously endorsed as a witness.

Our Court of Appeals has stated:

"Rule 153, Rules of Criminal Procedure, 17 A.R.S., requires the State to endorse the names of all state witnesses on the indictment. Rule XIII(e), Rules of the Superior Court of Maricopa County, 17 A.R.S., supplements Criminal Rule 153 and requires the endorsement of names of all State witnesses within five days before trial. In State v. King, 66 Ariz. 42, 182 P.2d 915 (1947) we find the following comment with reference to the failure to endorse a witness as provided by Rule 153:

'These rules do not in express terms provide that the effect of a failure to endorse the name of a witness disqualifies the unnamed person as a witness. We do not feel that the rules are susceptible of the interpretation contended for by appellant that a person whose name is not endorsed is absolutely disqualified from being a witness. The state may be penalized for failure to endorse the name of a witness for the court may in its discretion refuse to permit the use of an unendorsed witness as the ends of justice demand, or it may grant a continuance. This discretion is not an arbitrary one but rather a legal discretion to be exercised to effect the ends of justice.'

"While it is discretionary with the trial court whether to permit an unendorsed witness to testify, the exercise of such discretion must be consonant with the purpose of the rule, which purpose is to enable an accused to advisedly prepare his defense." State v. Von Reeden, 9 Ariz.App. 190, 194, 450 P.2d 702, 706 (1969).

While admittedly the better practice is to endorse all witnesses prior to the trial as required by Rule 153, Rules of Criminal Procedure, 17 A.R.S., in the instant case a reading of the transcript and a listening to the tape does not indicate that the failure to endorse was prejudicial to the defendant or that the trial court abused its discretion in allowing the officer to testify and the tape to be played to the jury.

## FAILURE TO REVEAL THE STATEMENTS OF THE DEFENDANT

On the morning of the second day of trial, the attorney for the defense moved that:

"* * * the Court order the Maricopa County Attorney and his deputies to produce any statements, written or oral, made by the accused that the State will produce at the trial."

The following took place:

"MR. ERLICHMAN: No objection to producing the DR after the officer who wrote the DR takes the stand.

"THE COURT: It is ordered after each police officer testifies Prosecution will provide Counsel for the defendant to aid them in cross-examination with a DR of this particular officer."

And:

"THE COURT: The second part of this motion is to produce any statement written or oral made by the accused that the State will produce at the trial.

"MR. DIETTRICH: Your Honor, we have no objection to producing statements made by the defendant to police *after* the crime was committed. (Emphasis added)

"THE COURT: Do you have any written statement—

"MR. DIETTRICH: No written statements.

"THE COURT: —you intend to offer, an admission against interests?

"MR. DIETTRICH: We have oral statements paraphrased into departmental reports. That's all we have.

"THE COURT: Do you intend to offer those statements into evidence?

"MR. DIETTRICH: Some of them."

It is not clear from the transcript what the order of the court was on defendant's motion and defendant's attorney did not press for a definitive ruling even though the State's attorney made it clear that he intended to provide only statements made *after* the crime was committed.

As a matter of fact, the defendant had made some very prejudicial statements to two police officers two weeks before the shooting and these statements were not revealed to the defendant's attorney until the two officers were called on rebuttal and over objection were allowed to testify:

"A. Well, he said the next time anything like that happened, referring to the altercation, that he would—he is going to take care of the son of bitch himself. And we asked him what he meant by that. He said, 'From now on I'll try to cooperate with you guys, but I'm through with it because of the fact [that] you guys [are] afraid of tarnishing your badges. I'll take care of the matter myself, and the next time some asshole does something like this I'm going to blow his mother-fucking head off.'

"Q. Did you say anything to him in response to this?

"A. Yes, we said, 'Well, you know you can go to jail for homicide.' And he again replied, 'I don't care, I don't give a damn, at least the son of a bitch will have what's coming to him'."

**540**

■ Were the motion properly and timely made and the production clearly ordered, we would not hesitate in holding that it was error for the prosecution to withhold the evidence produced by the State even on rebuttal. The defendant, however, has an obligation to clearly and timely make such motion in order that the court may clearly and timely rule:

> "A motion was also filed to require the prosecuting attorney to permit defendant, before trial, to examine certain exhibits which he intended to introduce in the trial. This motion was made after the trial was in progress and came too late. It was, therefore, a matter in which the court should act in the exercise of its sound discretion. * * *." State v. McClellan, 6 Ohio App.2d 155, 159, 217 N.E.2d 230, 233 (1966).

Since the motion to require the production of these statements was made after the trial was in progress, it was a matter for the court's sound discretion and we will not disturb it on appeal.

### TESTIMONY OF DEFENDANT'S WIFE

Jerilyn Bush, previously endorsed as a witness, was called as a witness on Friday. Questions were asked Jerilyn Bush concerning statements made by the defendant to her after the shooting:

> "Q. BY MR. DIETTRICH: My question, I believe, was: Are you familiar with the incident which took place on the 7th of December last year?
>
> "A. I have heard about it.
>
> "Q. Have you discussed it with Mr. Aldridge?
>
> "A. No."

After objections and some discussion, an attorney was appointed to represent the witness and trial was recessed over the weekend. During the weekend, the defendant and Miss Bush were married and this fact was revealed to the jury by defendant's counsel when she took the stand again on Monday:

> "Q. Jerilyn, did you get married over the weekend?
>
> "A. Yes, I did.
>
> "Q. To whom?
>
> "A. Lindy Aldridge.
>
> "Q. I hand you what has been marked Exhibit No. 11 for identification, I ask you to tell me what that purports to be.
>
> "A. It's a copy of a marriage license.
>
> "Q. And where was the marriage celebrated?
>
> "A. In Las Vegas, Nevada.
>
> "MR. CONNORS: That is all my voir dire questions, Your Honor, I offer the exhibit.
>
> At this time, Your Honor, the defendant claims the marital privilege."

■ The defendant contends it was error not to have produced any statements made by defendant to the witness. In addition to the failure on the part of the defendant to make a timely motion for such statements as discussed above, since the witness at the insistence of the defendant was precluded from testifying, there is no indication that the statements were in fact made or were favorable or unfavorable. The fact that the defendant invoked the privilege might lead one to believe that the testimony would have been unfavorable to the defendant.

■ Defendant further contends, however, that the testimony that he had married the witness during the course of the trial was prejudicial. He claims that from this latter information the jury could infer that he was trying to hide something by marrying Miss Bush in order to claim the marital privilege. It should be noted that it was the defendant's attorney himself who asked Miss Bush (Mrs. Aldridge) the questions about her marriage in order to lay a foundation upon which to claim the marital privilege. We find no error.

Judgment affirmed.

HAYS, C. J., and STRUCKMEYER, LOCKWOOD and HOLOHAN, JJ., concur.