(42 Misc. Rep. 664.)

## In re MORSE.

(Court of General Sessions, New York County. February, 1904.)

1. GRAND JURY—PROCEDURE—POWERS.

A grand jury, before it can inquire into a crime committed in the county, must be shown, by complaint or information or knowledge acquired, that there is reason to believe that a crime has been committed by a particular person, whose name may or may not be known to the grand jury.

2. SAME—WITNESS—COMPELLING ATTENDANCE.

A grand jury may compel a witness to attend to testify as to a crime alleged to have been committed, and examine him only on such matters as are relevant to the subject of the inquiry.

3. SAME—ACCUSED AS WITNESS.

Where the grand jury believe that the evidence of the accused may explain the charge against him, he may be allowed to appear, if he does so voluntarily; but before he is sworn he must be informed of the nature of the charge, and that, if he testifies, any statements which he may make can be used against him if he is indicted.

4. SAME—REFUSAL TO TESTIFY.

A witness before a grand jury, who refuses to testify on the ground that his answer may tend to convict him of a crime, is not guilty of contempt.

5. SAME—NEW INQUIRY.

Where a grand jury has presented an indictment to the court, it cannot thereafter institute a new inquiry to strengthen the testimony on which the indictment was based.

In the Matter of Charles W. Morse. Application by the grand jury for advice.

Wilbain Travers Jerome, for the People.

Guggenheimer, Untermyer & Marshall, for Morse.

GOFF, R. The grand jury of the county of New York, returning to court, presents the following resolutions:

"Resolved, that the foreman be instructed to appear before the Honorable John W. Goff, Recorder, and request of him the instructions of the court as to the rights and privileges of the grand jury and of Charles W. Morse, a witness summoned and sworn before them on the 19th day of February, 1904, and that, for the information of the recorder, a transcript of the testimony given by said Charles W. Morse shall be submitted with said request."

In response to this request, and in so far as may be pertinent to it, I advise the grand jury of their powers and limitations, and of the obligations and privileges of a witness summoned or appearing before them:

First. The grand jury have power, and it is their duty, to inquire into all crimes committed or triable in the county. Except in special cases specified by law, their power to inquire is limited to crimes committed or triable in the county. In order for them to exercise that power, it must be made to appear by complaint or information or knowledge acquired that there is reason to believe that a crime has been committed. They have not the power to institute or prosecute an inquiry on chance or speculation that some crime may be discovered. Such an inquisition, based upon mere suspicion, would be odious and oppressive, and would not be tolerated by our laws.

¶ 2. See Grand Jury, vol. 24, Cent. Dig. § 75.

There must be reason to believe that a crime of a specific character has been committed by a particular person, whose name may be either known or unknown to the grand jury.

Second. When they have reason to believe that a crime has been committed, they have the power to summon and compel the attendance of any witness and examine him upon all matters that are relevant and material to the subject of inquiry. They have not the power to summon a witness and examine him upon matters that are wholly unconnected with or unrelated to the subject of inquiry. The process of the grand jury can be used only for the purpose of aiding a lawful inquiry, and it must not be used for the purpose of oppression or harassment.

Third. In the investigation of a criminal charge, the grand jury is not bound to hear evidence for the accused, but, if they have reason to believe that evidence other than that already before them will explain away the charge, they should order such evidence produced. For that purpose they·may hear the evidence of the person accused, but his appearance before them must be voluntary and not under the coercion of a subpœna. If he so appears, and before he is sworn, he must be informed by the foreman of the nature of·the charge against him, and that, if he wishes to be sworn and make a statement, or answer questions in relation to that charge, he is at liberty to do so, but if he does do so, and an indictment should be found, any statement that he may make or·any answers that he may give may be used as evidence against him upon his trial. The privilege of permitting an accused person to appear before the grand jury should be accorded very sparingly, and, when accorded, should be surrounded with the utmost care and caution. If that be not done, an indictment found is liable to be set aside by the court.

Fourth. A witness summoned is bound to appear and answer all questions that are relevant and material to the subject under investigation. If he refuses to be sworn or to answer such questions, he is liable to be adjudged guilty of a criminal contempt. The grand jury, being an adjunct of the court, is considered a part thereof, and a contempt committed in its' presence is constructively committed in the presence of the court. There are, however, contingencies in which a witness may be justified in refusing to answer certain questions. In such case the refusal must rest upon the claim of privilege by the witness, conferred upon him by the fundamental law that "no person shall be compelled in any criminal case to be a witness against himself." This privilege belongs exclusively to the witness himself. He may waive it, at his election, and answer all questions, or he may claim it; and, if he does, it affords him complete protection. The contingency that will justify the exercise of this privilege is where a question is asked the witness, the answer to which may tend to convict him of a crime. If a witness bases his refusal to answer upon this ground, he must so state, and he cannot be then questioned further as to why or how such result could inure. Chief·Justice Marshall, in the trial of Aaron Burr, said:

"If the question be of such a description that an answer to it may or may not criminate the witness, according to the purport of the answer, it must rest

with himself, who alone can tell what it should be, to answer the question or not. If in such a case he may say upon his oath that his answer would criminate himself, the court can demand no testimony of that fact."

This beneficent provision of law is designed to protect even a guilty man from being harrassed, coerced, or tortured by questions, the answers to which might subject him to pains or penalties, prosecution or conviction for crime. But this claim of privilege of refusal to answer must be made by the witness in good faith, and in the honest belief, under oath, that an answer would tend to incriminate him. It cannot be used as a device for the purpose of obstructing the due administration of the criminal law by shielding others, or for a sentimental or chivalrous reason, based on love or friendship, or from an apprehension of hatred or ill will. It can be used only as a safeguard by and for the witness himself, and for no other purpose. Therefore care should be taken that the question asked be free from ambiguity, and so plain as to call either for a direct answer, or a refusal to answer on the ground that it might tend to convict him of a crime. And it should be made to appear from the whole examination and surrounding circumstances that the question was relevant and material to the subject of inquiry; otherwise the court, in whose immediate presence and hearing the examination did not take place, would be unable to determine whether the witness had properly or improperly claimed his privilege.

Fifth. When a grand jury finds a bill of indictment, and it is presented to the court, they have no further jurisdiction of its subject-matter, so far as the person or persons therein accused of crime are concerned, except by way of a superseding indictment for the purpose of supplying some omission, or of remedying some defect in the previous indictment. They cannot institute a new and independent inquiry for the purpose of eliciting additional testimony to supplement or strengthen the testimony on which the indictment was found, or to aid the prosecutor in the trial of the case.

By applying these rules to the examination which you have certified to me, it can be ascertained whether the grand jury was within its power in questioning the witness, and whether the witness properly or improperly exercised his privilege.

The examination is entitled as follows:

"Charles W. Morse, having been duly called and sworn as a witness before the grand jury in the case of the people of the state of New York against John Doe, testified as follows."

The foreman then said:

"I would like to make this statement to you on behalf of the grand jury: It is my duty to inform you, before you give any testimony here, that anything you may state to this grand jury may be used against you at some future time, and that you are therefore not under any compulsion to answer any questions that may lead to incriminate you."

It is a matter of common knowledge that the name John Doe is fictitious, and that it is used in judicial proceedings to represent or indicate a person whose true name is unknown. It may be inferred that a proceeding before the grand jury, between the people and this unknown person, was in its nature a criminal proceeding, but

there is nothing to show that any complaint, information, or charge had been made to the grand jury that a specified crime had been committed in this county by a known or an unknown person. This omission is very important, in determining whether the questions asked and refused to be answered were relevant and material to the subject of inquiry, and consequently whether the grand jury had the right to ask those questions. If the court, from the record of the proceedings before it, cannot say what the subject of inquiry was, it cannot determine whether the questions were relevant or material. And the caution given by the foreman to Morse rather obscures than clarifies the situation. He is told, after having been duly called and sworn as a witness, "that anything you may state may be used against you at some future time." Was Morse the John Doe? If he was, the manner of his being called and sworn and examined would render nugatory an indictment found against him. If he was not the John Doe, but was simply a witness, the caution administered was calculated to induce in him the belief that he was under suspicion. He was there either as an accused person or as a witness. If as an accused person, he had the absolute right to refuse to answer any and all questions. If as a witness, with the caution that whatever he might say might be used against him, he had a legal right to refuse to say anything that he believed could be used against him. A witness should be free to give his testimony untrammeled by fear or by threats of consequences.

The interrogatories to the witness on the examination may be grouped under three heads: Questions relating to transactions between him and the assistant district attorney who conducted the examination; questions regarding his marital relations; and questions as to his knowledge of certain individuals, and as to the whereabouts of others. Not knowing the subject of inquiry, it is impossible to say what relevancy or materiality these questions had to any inquiry or to each other; and, reading them as they are set forth, the court cannot say, as matter of law, that they refer to the commission of any crime.

Toward the close of the examination, this question was put to the witness:

"Q. Now, Mr. Morse, the grand jury of this county have indicted Charles F. Dodge for the crime of perjury, committed upon a motion in the Supreme Court, by which he succeeded in vacating a judgment of divorce obtained by his wife in 1898; his wife having subsequently and in the utmost good faith married you. The grand jury seek further light and further evidence, by which, when Charles F. Dodge is returned into this state under the warrant of the Governor, he may be duly convicted of that crime against the state, and of that wrong to you and to the woman whom you have every right to suppose was your lawful wife. Do you decline to give the grand jury any information that is in your possession upon that subject-matter? A. I decline to answer any of your questions on the ground that it may tend to incriminate me."

It is manifest that the purpose of this question was to obtain or procure from the witness information which would aid in the trial and conviction of Dodge. That is a laudable purpose, in which every good citizen should unite, for the district attorney to zealously adopt every fair and legal method to discover and present evidence suffi-

cient to convict a man of the heinous crime against the administration of justice which Dodge is charged with having committed. But the methods used must be fair and legal. They must not be coercive or inquisitorial, and a tribunal established or a procedure designed by law for one purpose cannot be perverted to another purpose, even though the latter be meritorious. It is better that Dodge, if guilty, should go unpunished, than that the powers of the grand jury should be invoked for an unlawful purpose. If the witness Morse has knowledge of evidentiary matters connected with that charge of perjury, it rests with his own ethical or moral perceptions of what is right whether he will voluntarily disclose them to the district attorney; but he cannot be taken before the grand jury, under the guise of a witness, and compelled to furnish information which may aid the district attorney in the prosecution of an indictment already found.

Except as I have pointed out, this grand jury had no jurisdiction of any matter connected with that indictment; and it follows that they had no power to issue process and compel the attendance of the witness Morse for the purpose indicated by this question, and whether he properly or improperly claimed his privilege becomes of no consequence.

From the principles which I have stated, and that are applicable to your inquiry of the court, and from the conclusions which I have drawn on reading the examination in the light of those principles, I advise you that you cannot lawfully continue the examination of the witness Morse under existing conditions, and he must be discharged from further attendance under the present subpœna.

Should the district attorney advise the grand jury to institute an inquiry into any crime committed or triable in this county as the law directs, and Charles W. Morse is required to appear before them as a witness, there is no legal obstacle to a subpœna being issued, compelling his attendance.

Ordered accordingly.