450 P.2d 702

The STATE of Arizona, Appellee,

v.

John M. VON REEDEN, Appellant.

No. 1 CA–CR 113.

Court of Appeals of Arizona.

Feb. 25, 1969.

Gary K. Nelson, Atty. Gen., by Carl Waag and James S. Tegart, Asst. Attys. Gen., for appellee.

Machmer & Lehman, by Gerald A. Machmer, Phoenix, for appellant.

STEVENS, Judge.

This is an appeal by defendant from a jury verdict and judgment of guilt to eleven counts of grand theft by embezzlement and a sentence of one to five years in the Arizona State Prison. A.R.S. § 13–682, subsec. 1, as amended 1959, § 13–688, § 13–138, § 13–139, and § 13–140.

The charges were tried upon a Grand Jury indictment. The Grand Jury investigation consumed several days and involved the testimony and verified statements of numerous witnesses. Defendant also appeared before the Grand Jury pursuant to subpoena and testified. Prior to the time he was subpoenaed to appear before the Grand Jury, the testimony before that body was of the nature that the investigation was centering upon the defendant as well as upon others. On 31 January, 1966, the Grand Jury returned an indictment charging defendant with eleven counts of grand theft by embezzlement and one count of forgery. Defendant was thereafter arrested and on 11 February, 1966, counsel for defendant filed a demand for arraignment and a motion for speedy trial. Defendant was arraigned and trial was set for 21 March, 1966. Thereafter, over objection by defendant, trial was continued until 31 March, 1966. At the trial, which commenced on 31 March, 1966, the jury found defendant guilty on each of the eleven grand theft by embezzlement counts, and not guilty on the forgery count.

Before turning to defendant's arguments on appeal, we find it appropriate to summarize the transactions which were the subject matter of the Grand Jury investigation and the indictment upon which defendant was tried and convicted.

Each of the eleven counts charging defendant with grand theft by embezzlement were identical in language. Count One of the indictment appeared as follows:

> "That on or about the 4th day of October 1965 the said John M. Von Reeden committed grand theft by embezzling money in the amount of $805.50 from the North American Finance Company, all in violation of A.R.S. § 13–682(1) as amended 1959, 13–688, 13–138, 13–139 and 13–140."

Each of the eleven counts was based upon a separate transaction involving the purchase of a used car from defendant's used car lot on or about 4 October, 1965. The asserted circumstances surrounding each purchase transaction were substantially the same and appeared as follows: The purchaser was sold a low price used car with a low down payment. The prices of the cars ranged from $35 to $200. Before leaving the car lot, the purchaser was asked by defendant or his employee, or the manager of North American Finance Company (hereinafter North American), to sign several papers. These papers consisted of several loan documents used in connection with the loan business of North American, and included a salary and wages assignment, a note, a loan voucher, a loan statement, and an affidavit. Each of the documents was blank when presented to and signed by the purchaser. The purchaser was also presented a blank check which he then endorsed on the back side. None of the purchasers were ever informed that they were obtaining a loan nor did they receive any money as a result of the transaction. After the purchaser left the car lot the blank papers were completed in such a manner as to reflect a personal loan to the purchaser in the net amount of $805.50. The blank check endorsed by the purchaser was also subsequently completed to show a check payable to the purchaser in the amount of $805.50, and drawn on the bank account of North American which was held by the

Arizona bank. The evidence also showed that each of the foregoing checks was endorsed by defendant and deposited by him to his account which was held by the Valley National Bank, and that two days later nearly all of the money deposited was withdrawn. There was also evidence that the operating policy of North American expressly prohibited the closing of a loan at a place other than the business office of North American; that the maximum amount that North American could lend on a used car was $300; that the maximum personal loan amount which the Phoenix manager could approve without further approval from the main office of North American in St. Louis was $805.50; and that the manager of North American, who was involved in the foregoing transactions, had been terminated as an employee of North American, his whereabouts at the time of trial being unknown.

The questions presented for our determination are (1) whether defendant was denied a fair trial by reason of the lack of opportunity to prepare his defense; and (2) whether the indictment against defendant was invalid because based upon insufficient and incompetent evidence and upon evidence procured in violation of defendant's constitutional rights.

## RIGHT TO PREPARE DEFENSE

Defendant urges that he was derived of his fundamental right to prepare his defense when; (1) the trial court twice denied defendant's motion for bill of particulars and subsequently granted the State's motion for a bill of particulars on the morning the trial commenced; (2) when the trial court permitted a witness for the State to testify when that witness had not been endorsed on the indictment; (3) when the trial court admitted in evidence certain exhibits which were offered by the State and not produced to defendant after defendant's motion for inspection had been granted.

As previously noted, the eleven counts charging defendant with grand theft by embezzlement were identically worded. On 18 February, 1966, after defendant's motion for speedy trial had been granted, defendant filed a motion for a bill of particulars for the purpose of distinguishing each of the eleven counts. At the same time defendant also filed a motion for inspection, requesting permission "to inspect and copy or photograph any and all documents, writings, checks, negotiable instruments or other written or printed documentary evidence, or other tangible objects which the county attorney possesses and which will be used in the above entitled trial against the above named defendant."

On 3 March, 1966, an order was entered granting defendant's motion for inspection but defendant's motion for a bill of particulars was denied. Thereafter, on 15 March, 1966, defendant again moved for a bill of particulars but this motion was also denied.

The trial was set to commence on the morning of 31 March, 1966. At this time defendant was still without sufficient information which would enable him to distinguish each of the counts and prepare a defense as to each count. However, on the morning the trial commenced, the State moved to grant the defendant the particulars which he had previously requested. Defendant objected to the granting of the motion on the ground that he had proceeded to trial on the theory that since his previous motions had been denied, ten of the eleven counts would be subject to dismissal under the doctrine of double jeopardy. Defendant's objection was overruled and defendant was presented with particulars which distinguished each count of the indictment. The trial was commenced immediately thereafter. It spanned a period of approximately two weeks and resulted in nearly 1050 pages of reported testimony.

During the presentation of the State's case, at a point more than half way through trial, the State called Jerry Dykman, operations officer of the Arizona Bank, to the stand. Counsel for defendant strenuously objected and moved the Court not to permit Dykman to testify on the grounds that

Dykman was never endorsed on the indictment. Defendant's motion was heard by the Court in chambers and involved extensive argument by both counsel for defendant and the deputy county attorney. The defense urged that Dykman's name was not endorsed upon the indictment prior to the minimum time specified by the Rules and that when counsel was notified he was without sufficient time to prepare. The deputy county attorney countered that the witness's testimony would be brief and entirely foundational, the foundation being in relation to bank records. The defense urged that a brief continuance would not be adequate to enable the defense to check the records and to complete any additional investigation which might be required. The defense was granted a brief recess to confer with Dykman.

■ Dykman was then called to the stand and testified to certain foundational matters relating to the Arizona Bank records of the North American Finance Company checking account during the month of October, 1965. At the conclusion of Dykman's testimony, the State offered into evidence the bank's records pertaining to the North American account. The defense objected to the introduction of the records by reason of the failure of the State to produce them for inspection in response to the motion for inspection. The deputy county attorney attempted to justify the failure to inform defense counsel and the failure to make them available for inspection on the basis that the records were in the possession of the bank and not in the possession of the county attorney. In our opinion the motion earlier filed by the defendant and granted by the Court was broad enough to require the State to disclose these records and the place of their custody. The failure to disclose in response to the motion, in our opinion, could have led the defendant to the conclusion that the State was without documentary proof, at least in part, to support the urged counts.

■ In our opinion, the foregoing observations significantly demonstrate a failure on the part of the trial court to exercise proper discretion in the relation to the protection of defendant's right to prepare his defense. Although each of the incidents, alone, may not have resulted in sufficient prejudice to require reversal, it is our opinion that the cumulative effect of these incidents, as a whole, significantly hampered defendant in the preparation of his defense, and deprived him of a fair trial.

■ Article 2, § 24 of the Arizona Constitution, A.R.S. recognizes certain basic rights of an accused in a criminal proceeding. One of these is the right "to demand the nature and cause of the accusation against him." The same right has been deemed included within the Fourteenth Amendment guarantees applicable to state criminal proceedings. Application of Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). Rule 116 of the Arizona Rules of Criminal Procedure, 17 A.R.S., implements the constitutional right of an accused to be informed of the charge against him and provides in part that the court " * * * shall, at the request of the defendant, order the county attorney to furnish a bill of particulars * * * " when necessary to enable the defendant to prepare his defense.

■ In construing Criminal Rule 116 our Courts have repeatedly stated that the trial court has the duty to furnish a bill of particulars only when "necessary" and that determination of the "question of necessity" rests within the court's sound discretion. State v. Gortarez, 98 Ariz. 160, 402 P.2d 992 (1965); State v. Sanders, 7 Ariz.App. 538, 441 P.2d 573 (1968). It has also been stated, however, that such discretion "should be exercised liberally to the end that no constitutional or statutory right be denied an accused." State v. Benham, 58 Ariz. 129, 118 P.2d 91 (1941). The "necessity" of a bill of particulars is vividly portrayed in the case before us. Defendant was prosecuted by indictment as distinguished from prosecution by information where an accused is afforded

the opportunity of discovery at a preliminary hearing. Each of the eleven grand theft by embezzlement counts was identically worded. From the time defendant was indicted until the morning of trial he was without sufficient information to distinguish each of the counts and prepare his defense therefor. We are of the opinion that under these circumstances the trial court exercised its discretion in a manner contrary to defendant's right to know the "cause of accusation against him." We are unable to agree with the State's argument that the granting of the State's motion for a bill of particulars on the morning of trial cured the improper denial of defendant's two previous motions for bills of particulars. To uphold this argument would constitute a plain disregard of defendant's right to a speedy trial, which right defendant elected to exercise early in the criminal proceedings.

We next consider the foundational testimony of witness Dykman who had not been endorsed on the indictment, and subsequent admission of the bank's records pertaining to the North American Finance Company checking account.

■ Rule 153, Rules of Criminal Procedure, 17 A.R.S., requires the State to endorse the names of all state witnesses on the indictment. Rule XIII(e), Rules of the Superior Court of Maricopa County, 17 A.R.S., supplements Criminal Rule 153 and requires the endorsement of names of all State witnesses within five days before trial. In State v. King, 66 Ariz. 42, 182 P.2d 915 (1947) we find the following comment with reference to the failure to endorse a witness as provided by Rule 153:

> "These rules do not in express terms provide that the effect of a failure to endorse the name of a witness disqualifies the unnamed person as a witness. We do not feel that the rules are susceptible of the interpretation contended for by appellant that a person whose name is not endorsed is absolutely disqualified from being a witness. The state may be penalized for failure to endorse the name

of a witness for the court may in its discretion refuse to permit the use of an unendorsed witness as the ends of justice demand, or it may grant a continuance. This discretion is not an arbitrary one but rather a legal discretion to be exercised to effect the ends of justice."

While it is discretionary with the trial court whether to permit an unendorsed witness to testify, the exercise of such discretion must be consonant with the purpose of the rule, which purpose is to enable an accused to advisedly prepare his defense.

■ Although there may be cases where the granting of a continuance may amply protect the rights of the defendant who is unexpectedly confronted by an unendorsed witness, we do not believe such is the posture of the case before us. In the instant case the record discloses that Dykman was a key witness for the State. In order to prove its case it was essential for the State to show that the checks endorsed by defendant were charged against the North American checking account with the Arizona Bank. The State sought to establish this fact through admission of bank records. To establish the requisite foundation for the admission of these records, the State called Dykman to testify. Defendant had no knowledge, notwithstanding his prior discovery efforts, that Dykman would testify or that the records would be presented in evidence, until two days before Dykman was called to the stand, a point more than halfway through the lengthy trial. In our opinion, the plain effect of the trial court's permitting Dykman to testify was to place defendant in the unfair position of either requesting a continuance and thereby waiving his right to a speedy trial, a right vigorously asserted by defendant throughout the proceedings, or to proceed with the trial without having had the opportunity to prepare his defense.

## GRAND JURY PROCEEDINGS

Defendant next contends that the indictment upon which he was convicted

should be quashed because it was procured in violation of his Fifth Amendment privilege against self-incrimination, and his Sixth Amendent right to assistance of counsel. It is urged by defendant that because he was compelled by subpoena to appear and testify before the Grand Jury, which indicted him, and because he was not permitted to have his attorney present in the Grand Jury room when he testified, the indictment must be quashed. Defendant also urges that the indictment should be quashed because hearsay statements were read to the Grand Jury.

During the course of this appeal counsel for defendant moved this Court to order transcription of the testimony presented to the Grand Jury and that a copy thereof be furnished defendant. The motion was resisted by the State and on 25 September, 1967, we entered an order granting defendant's motion. The State was given sufficient time to question the propriety of the order by original writ to the Supreme Court but such action was not taken.

We have carefully examined the Grand Jury transcript and the trial transcript and find an absence of evidence at the trial which was procured from defendant while testifying before the Grand Jury. We therefore, limit our consideration to the question whether an indictment can be quashed on the grounds that inadmissible evidence was presented to the Grand Jury.

The quashing of an indictment is governed by Rule 103 and Rule 169, Rules of Criminal Procedure, 17 A.R.S. Rule 103 expressly provides that " * * * No indictment shall be quashed or judgment of conviction set aside on the ground that there was not sufficient legal evidence." Rule 169 sets forth several grounds for quashing an indictment or information. None of these grounds relate to the sufficiency or competency of evidence presented to the Grand Jury. In applying this Rule, our Supreme Court has stated on several occasions that an indictment or information may not be quashed on the grounds of insufficient or incompetent evidence since such grounds are not set forth in Rule 169. See State v. Essman, 98 Ariz. 228, 403 P.2d 540 (1965); State v. Abbott, 103 Ariz. 336, 442 P.2d 80 (1958); Pfeiffer v. State, 35 Ariz. 321, 278 P. 63 (1929). In Pfeiffer it was urged that an indictment should have been quashed on the grounds that the only evidence before the Grand Jury was incompetent testimony and hearsay. The Supreme Court dismissed this contention stating, at page 323 of 35 Ariz., at page 64 of 278 P.:

" * * * We do not think the question of sufficiency or character of the evidence received by the grand jury can be raised by motion to quash. * * * Section 972 id., enumerates the grounds upon which an indictment must be set aside. None of these grounds is the insufficiency or the hearsay character of the evidence received by the grand jury in its investigation of the charge against the accused. As we understand it, the statutory grounds for vacating or setting aside an indictment or information are exclusive."

Also see Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956). United States v. Blue, 384 U.S. 251, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966). We hold that defendant's contentions relating to the invalidity of the indictment are governed by the pronouncement of our Supreme Court in Pfeiffer. We therefore find it unnecessary to express an opinion with reference to whether defendant was in fact deprived of his constitutional rights as suggested. Nevertheless, having had the opportunity to review the transcript of the Grand Jury proceedings, we wish to make it clear that the tactics employed to elicit testimony from defendant while a witness before the Grand Jury are to be highly disapproved. In this connection, we note that defendant repeatedly asserted his right to be silent when questioned before the Grand Jury; that the assertion of this right was challenged by the deputy county attorney on several occasions when he asked defendant why he was refusing to testify; and in spite of defendant's refusal to testify, fur-

**196**

ther questions were propounded to him. The record further discloses that defendant was advised of the possibility of a contempt charge for failing to produce records pursuant to a subpoena duces tecum, and that the Grand Jury seriously considered the issuance of a contempt citation and an indictment for perjury.

The judgment is reversed for a new trial or other proceedings not inconsistent with this opinion.

DONOFRIO, C. J., and CAMERON, J., concur.