## No. 26190

Kenneth R. Gher, as Secretary-Treasurer of School District No. 1 in the City and County of Denver and State of Colorado v. The District Court in and for the County of Adams and State of Colorado; The Honorable Jean J. Jacobucci, Chief Judge of said District Court; the Adams County Grand Jury; and Floyd Marks, as District Attorney of the Seventeenth Judicial District

(516 P.2d 643)

Decided December 10, 1973.     Rehearing denied December 31, 1973.

Henry, Cockrell, Quinn & Creighton, Richard C. Cockrell, Benjamin L. Craig, Peter J. Wiebe, Jr., for petitioner.

Floyd Marks, Harlan R. Bockman, James E. Heiser, for respondents.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

The district attorney of Adams County caused a so-called grand jury subpoena duces tecum to be served on Kenneth R. Gher, the secretary-treasurer of School District No. 1 in the City and County of Denver, which compelled that voluminous records of the school district be produced. Counsel for the school district moved to quash the subpoena, and the district court denied the motion. The school district filed an original proceeding in the nature of prohibition with this court, and we issued a rule to show cause. We now make the rule to show cause absolute.

The subpoena duces tecum which is before us is *sui generis.* The document in issue bears some resemblance to both a civil and a criminal subpoena. Both parties have loosely referred to this document as a grand jury subpoena, and we have elected, for the purposes of this proceeding, to treat it as such.

The issuance of the subpoena was initiated by the Adams County district attorney in an effort to compel School District No. 1 (Denver) to assemble and transmit to the Adams County grand jury "all records, documents, exhibits and minutes of meetings either approving or disapproving or relating to annexations of Adams County land into Denver in the last two years." The Adams County district attorney's answer brief, which tends to ignore the issues involved in this original proceeding, suggests that "the purpose of the grand jury subpoena was to elicit testimony presented before the School Board in Denver which might establish the commission of a crime in Adams County, Colorado." Even if we were to assume that this bald statement in the answer brief reveals the genuine purpose behind the grand jury subpoena, we would be forced to recognize that the breadth of the demand reflects impropriety and reason for close judicial scrutiny.

The record and pleadings, together with admissions made by the Adams County district attorney to the School Board of School District No. 1, reveal the true purpose behind the grand jury subpoena in this case. The district attorney attempted to use the grand jury as a means of developing facts relating to an annexation dispute between Denver and some of the surrounding counties and municipalities. This annexation does not involve any possible violation of criminal laws and is not the proper focus of a grand jury proceeding. A grand jury may not, in the absence of enabling legislation, act in civil matters or exercise its authority to harass another governmental body for political or civil purposes. No satutory authority exists in Colorado which permits  a grand jury to extend its investigatory jurisdiction into a civil or political annexation dispute by the hollow assertion that the inquiry has criminal overtones.

A grand jury has historically functioned not only as an accusatory body, but also as an investigatory body. In carrying out its investigative function, the grand jury serves as a buffer between the state and its citizens by screening accusation of criminal activity to determine whether the

evidence is so insubstantial that charges should not be brought. Dession and Cohen, *The Inquisitorial Functions of the Grand Jurors,* 41 Yale L.J. 687 (1932); Konowitz, *The Grand Jury as an Investigating Body of Public Officials,* 10 St. John's L. Rev. 219 (1936); Kuh, *·The Grand Jury 'Presentment': Foul Blow or Fair Play?,* 55 Colum. L. Rev. 1103 (1955); Note, 44 Cornell L.Q. 257 (1959); Note, *The Grand Jury as an Investigatory Body,* 74 Harv. L. Rev. 590 (1961); Note, *The Grand Jury — Its Investigatory Powers and Limitations,* 37 Minn. L. Rev. 586 (1953); Antell, *Modern Grand Jury: Benighted Supergovernment,* 51 A.B.A.J. 153 (1965). Admittedly, the grand jury has broad investigatory powers, but only in matters which relate to possible criminal activity.

We have no intention of restricting the broad powers of the grand jury or to grant standing to every witness to suppress evidence that has been properly subpoenaed for the grand jury. *See In re Egan,* 450 F.2d 199 (3d Cir.) (en banc), *cert. granted, sub nom., United States v. Egan,* 404 U.S. 990, 92 S.Ct. 531, 30 L.Ed.2d 541 (1971). *See* Note, *Fourth Amendment Protection for a Grand Jury Witness,* Am. Crim. L. Rev., vol. 10, no. 4, p. 881 (1972). However, when a grand jury subpoena is being used for purposes apart from an effort to ferret out criminal activity or other statutorily authorized purposes, the courts must intervene to prevent a gross abuse of the judicial process. *Hale v. Henkel,* 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1905); *In re Schofield,* 486 F.2d 85 (3d Cir. 1973), 42 L.W. 2181 (October 9, 1973). *See also Petition of McNair,* 324 Pa. 48, 187 A. 498, 106 A.L.R. 1373 (1936).

We, therefore, make our rule absolute and direct the trial court to quash the subpoena duces tecum.