560 P.2d 778

MARSTON'S, INC., an Arizona Corporation and John N. Norris, III, Petitioners,

v.

Honorable Roger G. STRAND, Judge of the Superior Court, the State of Arizona, and the Attorney General of the State of Arizona, Respondents.

The STATE of Arizona ex rel. Bruce E. BABBITT, Attorney General, and the State Grand Jury, Petitioners,

v.

MARSTON, INC., et al., Respondents.

Nos. 12859, 12867.

Supreme Court of Arizona, In Banc.

Jan. 21, 1977.

Rehearing Denied Feb. 23, 1977.

Gordon, J., filed an opinion specially concurring in part and dissenting in part in which Cameron, C. J., joined.

Bruce E. Babbitt, Atty. Gen., John A. LaSota, Jr., John Pressley Todd and Ronald A. Lebowitz, Asst. Attys. Gen., Phoenix, for State of Arizona.

Goldstein, Mason & Ramras, Ltd. by Philip T. Goldstein, Phoenix, for Marston's, Inc. and Edward B. Norris.

Debus, Busby & Green, Ltd. by Jordan L. Green and Robert J. Lyman, Phoenix, for John N. Norris, III.

Flynn, Kimerer, Thinnes & Derrick by Clark L. Derrick and Thomas A. Thinnes, Phoenix, for Robert T. Bonnes.

HOLOHAN, Justice.

The Attorney General for the State and Marston's, Inc. and one of its officers have filed special actions challenging certain orders of the superior court regulating the production of documents before the state grand jury.

On July 27, 1976, the Attorney General issued and had served subpoenae duces tecum on Marston's, Inc. and John N. Norris, its vice president and custodian of records, requiring the production of certain Marston's corporate records before the state grand jury. Compliance was to be made by producing the records either on August 3, 1976, at the grand jury room of the old superior courthouse in Phoenix or on July 30, 1976, at the Attorney General's investigations division. Marston's and Norris filed motions to quash or, alternatively, to have a protective order issued prohibiting the Attorney General from impounding any subpoenaed records.

The assignment judge for the state grand jury assigned the matter to Judge Roger Strand of the Maricopa County Superior Court who denied the motion to quash, ordered that compliance was to be made only at the grand jury room and prohibited the impoundment of any subpoenaed documents by the Attorney General. Norris then produced the subpoenaed materials but refused a request by the Attorney General to take the documents to the latter's offices. In a clarification order Judge Strand ordered the Attorney General to make all inspec-tions during normal business hours at the grand jury room location after which time the documents were to be returned to the custodian each day. The new order specifically denied the Attorney General's request to retain the subpoenaed records for a one-week period.

Following the clarification order Norris produced the required records and the Attorney General removed them from the grand jury room to his investigations division's office. The records were returned to Marston's at the end of the business day. When Norris next complied with the subpoenas he objected to the absence of the grand jurors and thereafter filed a Petition for Relief seeking to bar the Attorney General from removing the subpoenaed materials from the grand jury room. Judge Strand supplemented his earlier order to allow the inspection of the records outside the presence of the grand jurors, but continued to require such inspections to be made at the grand jury room during normal business hours with their return to the custodian at the end of each day.

After Judge Strand's last order, Marston's and Norris filed a special action with this court challenging the Attorney General's authority to issue a subpoena duces tecum and claiming that the retention and inspection of the subpoenaed records violated their Fourth Amendment rights. The Attorney General filed a special action arguing that Judge Strand had exceeded his jurisdiction and abused his discretion by placing limits upon the manner in which the Attorney General could inspect the subpoenaed materials. Since both petitions raise similar issues we have consolidated them for the purpose of this decision.

Essentially three issues are raised by these special actions.

1. Does the Arizona Attorney General have authority to issue a subpoena duces tecum in a state grand jury proceeding?

2. Did the retention and inspection of Marston's corporate records, produced pursuant to a subpoena duces tecum, constitute an illegal search and seizure in violation of the Fourth Amendment?

3. Did Judge Strand exceed his jurisdiction and abuse his discretion in limiting the manner in which the subpoenaed records could be inspected by the Attorney General?

## AUTHORITY FOR SUBPOENA DUCES TECUM

 Petitioners Marston's and Norris argue that the Attorney General is not empowered to subpoena documents in a state grand jury proceeding; that the statutes limit the power of the Attorney General to compelling the attendance of witnesses before a state grand jury. We do not agree.

The authority for issuing and serving subpoenas in a state grand jury proceeding is set forth in A.R.S. § 21–427(C) which states:

"The attorney general or his designee shall have authority to issue subpoenas *for witnesses* statewide for a state grand jury in accordance with Title 13, Article 3, Chapter 7." (Emphasis supplied.)

The applicable section of Title 13, Article 2, Chapter 7, authorizing the issuance of criminal subpoenas is A.R.S. § 13–1821 which reads:

"A. The process by which attendance of a witness before a court or magistrate is required is a subpoena.

"B. The subpoena may be signed and issued:

"1. By a magistrate before whom a complaint is laid *for witnesses,* either on behalf of the state or defendant.

"2. By the county attorney for witnesses for the prosecution, or *for such other witnesses* as the grand jury upon an investigation pending before it may direct, or *for witnesses* on an indictment or information to appear before the court in which the indictment or information is to be tried.

"3. By the clerk of the court in which an indictment or information is to be tried.

"C. The clerk shall, at any time, upon application of defendant, and without charge, issue as many blank subpoenas, subscribed by him as clerk, *for witnesses*

as the defendant requires." (Emphasis supplied.)

Petitioners Marston's and Norris argue that the term "for witnesses" limits the authorized subpoena power to a subpoena ad testificandum and does not allow for the issuance of a subpoena duces tecum. We do not believe that such a restricted interpretation of the Attorney General's subpoena power is warranted.

 Although we recognize the differences between a subpoena ad testificandum and a subpoena duces tecum we believe that the term "for witnesses" as used in the criminal code and A.R.S. § 21–427(C) includes both. We note that petitioners' interpretation of the questioned language would contravene a long-standing history of issuing subpoenas seeking documentary evidence in criminal matters and would also preclude any defendant in a criminal case from issuing a subpoena duces tecum. We are of the opinion that the term "subpoena for witnesses" is to be interpreted in a generic sense and includes "any subpoenas necessary to accomplish the intentions of the statute." *Davis v. Lehigh Valley Railroad Co.,* 97 N.J.L. 412, 117 A. 716 (1922). The language used embraces both a subpoena ad testificandum and a subpoena duces tecum. *In re Saperstein,* 30 N.J.Super. 373, 104 A.2d 842 (1954); *In re Bick,* 82 Misc.2d 1043, 372 N.Y.Supp.2d 447 (1975). The form of the subpoena advises a witness whether he is required to appear merely to testify or bring specific documents.

We conclude that the Attorney General had the authority to issue the subpoena for the production of documents by Marston's and Norris.

## CLAIMS OF ILLEGAL SEARCH AND SEIZURE

Counsel for Marston's and Norris contend that the order of the superior court, last issued, which in effect allows the Attorney General or his representatives "to rummage through Marston's books and records at its leisure, outside the presence of the Grand Jury" was a violation of Fourth Amend-

ment rights. Counsel argue that the Attorney General by use of a subpoena duces tecum has nullified the safeguards of the Fourth Amendment. The position of counsel ignores the role of the grand jury in our constitutional system. The same Constitution which provides Fourth Amendment rights also provides for a grand jury system.

The grand jury system is an investigative body acting independently of either prosecutor or judge whose mission is to bring to trial those who may be guilty and clear the innocent. *United States v. Dionisio,* 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973). In order that it carry out its mission the grand jury has a right to every man's evidence except for those persons protected by a constitutional, common law, or statutory privilege. *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). A subpoena to appear before a grand jury is not a "seizure" in the Fourth Amendment sense. *United States v. Dionisio, supra.* There are, however, limitations to the power of the grand jury. The grand jury cannot require a witness to testify against himself, nor may it require the production by a person of private books and records that would incriminate him. *Hale v. Henkel,* 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906).

A subpoena, authorized by law, requiring the production of corporate records and papers before a grand jury affords no Fifth Amendment protection against self-incrimination to either the corporation or the officers of the corporation. *Oklahoma Press Pub. Co. v. Walling,* 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946). The Fourth Amendment provides protection against a grand jury subpoena duces tecum which is too indefinite or too sweeping in its terms to be regarded as reasonable. *United States v. Dionisio, supra; Oklahoma Press Pub. Co. v. Walling, supra.*

We have held that the issuance of the subpoena was authorized by law. It required the production of corporate records before the grand jury. The subpoe-

na was not challenged as indefinite or "too sweeping to be regarded as reasonable." The challenge has been limited to the use being made of the documents by the grand jury and the Attorney General. From the authorities cited we believe that the grand jury has the power to retain records presented to it pursuant to a subpoena duces tecum, and that body may review the records personally or have others review the records. This latter point involves an issue in which both parties disagree with the order of the superior court.

## DISCRETIONARY CONTROL OF THE SUBPOENA DUCES TECUM

As we have pointed out, the grand jury's investigatory powers are very broad. Counsel for Marston's and Norris argue that the superior court abused its discretion in allowing the Attorney General to retain and inspect subpoenaed records during normal business hours. The Attorney General, however, contends that the superior court abused its discretion in limiting the rights of retention and inspection. The Attorney General urges that he should be allowed to take the records to his office for unrestrained inspection. The Attorney General points out that the Rules for State Grand Juries provide that any records presented to and considered by the state grand jury must be held thereafter by that body. Rule 5, Arizona Supreme Court Rules for State Grand Juries, 112 Ariz. XCV (1976).

The superior court has made an attempt to accommodate all parties involved. While such accommodation is commendable, any restraints on a grand jury investigation must be carefully scrutinized.

A grand jury witness is not entitled to set limits to the investigation which the grand jury may conduct. *Blair v. United States,* 250 U.S. 273, 39 S.Ct. 468, 63 L.Ed. 979 (1919). The burden is on the witness to show that there is a violation of constitutional rights or an abuse of the grand jury process. Because the task of the grand jury is to inquire into the existence of possible criminal conduct and to return only well-founded indictments, its investigative

powers are necessarily broad. *Branzburg v. Hayes, supra.* The power to subpoena witnesses is essential to carry out its task.

■ The power of the grand jury is not unlimited, and that power is subject to judicial control. *United States v. Dionisio, supra; Branzburg v. Hayes, supra.* The scope of judicial control is necessarily limited so that there is a balance between the constitutional purpose of the grand jury and the constitutional rights of witnesses. A grand jury investigation must not be frustrated or impeded by minitrials and preliminary showings.

"The grand jury may not always serve its historic role as a protective bulwark standing solidly between the ordinary citizen and an overzealous prosecutor, but if it is even to approach the proper performance of its constitutional mission, it must be free to pursue its investigations unhindered by external influence or supervision so long as it does not trench upon the legitimate rights of any witness called before it." *United States v. Dionisio,* 410 U.S at 17, 93 S.Ct. at 773, 35 L.Ed.2d at 81.

■ The superior court has jurisdiction to grant appropriate relief to a witness subpoenaed to appear before a grand jury when the witness has made a preliminary showing that the action of the grand jury is in violation of his constitutional rights, oppressive, abusive, or unlawful. When such a showing is made by the witness the superior court may require additional proceedings to deal with the matters so presented.

■ In the case at issue it is safe to assume that the grand jury is incapable of analyzing the corporate records produced by the witness. To understand the material brought before them, the grand jury must have the records reviewed by persons familiar with accounting who can make an analysis and report the results to the grand jury. The order of the superior court limiting inspection to the vicinity of the grand jury room and requiring the return of the records to the corporation each evening is a restriction on the grand jury in its investigation. Absent a proper showing such as

abuse or oppression the superior court may not restrict a grand jury investigation. Had there been some claim that the records under subpoena were records used daily in the business of the corporation there might be some necessity for relief. No such showing or claim was made in this case.

■ The suggestion is made that the restriction in this case is not on the grand jury but on the prosecutor. This position ignores the necessary role which the prosecutor occupies in the grand jury system. It is the duty of the prosecutor, whether it be a county attorney or attorney general, to serve the grand jury. A.R.S. § 21–408 and § 21–427(A). Generally the prosecutor presents the evidence, prepares the indictments, and advises the grand jury on legal matters. In performing these functions wide latitude is given to the prosecutor. This freedom is given not to accommodate the prosecutor but to assist the grand jury in carrying out its investigations. After a witness appears before the grand jury, he may be required to leave with the grand jury any physical evidence which was produced. The prosecutor may take custody of such evidence for the grand jury. In addition the prosecutor may inspect and review the evidence. He must preserve the secrecy of testimony and evidence presented before the grand jury. A.R.S. § 21–234(B). To further assist the grand jury in understanding the evidence, the prosecutor may secure the assistance of investigators, accountants, and other experts to inspect and review the evidence. These experts are subject to the prohibition against disclosure of evidence presented to a grand jury. The better practice is to have the experts sworn as witnesses before the grand jury. A restriction on the presentation of evidence by the prosecutor is in fact a restriction on the grand jury and its right to receive evidence on criminal matters.

We have held that the subpoenaed material did not violate any constitutional rights, and there is no showing of any oppression. The challenged order of the superior court is set aside. The Attorney General should

be allowed to inspect and examine the records presented to the grand jury without interference by the superior court or the custodian of the records.

Relief denied in part, granted in part.

STRUCKMEYER, V. C. J., and HAYS, J., concur.

GORDON, Justice (specially concurring in part and dissenting in part):

While I agree with much of the majority opinion, particularly in the first two sections, I am compelled to specially concur in the first two parts and dissent as to the third section.

I agree that a fair construction of the appropriate Arizona statutes grants the grand jury the power to issue a subpoena duces tecum for corporate records. Where I disagree with the majority is in the conditions which must be met before this power of the grand jury may be exerted: certain procedural aspects of when and how the subpoenas may be issued are discussed infra. I also agree with the majority that the courts should not and may not unduly interfere or hamper grand jury investigations. Records such as those in the instant case must be inspected under conditions where experts can properly carry out their functions.

My problem arises because I read the majority opinion to say that there are no limits on whose records the Attorney General or the grand jury can take and peruse and that the Attorney General need not consult with the grand jury in any way before issuing a subpoena duces tecum. There are, however, limits on the power of the Attorney General to issue subpoenas pursuant to A.R.S. § 21–427(C), and the Superior Court has the authority to hold the grand jury and the Attorney General within these limits. The limits are mandated by the State Grand Jury Statute passed by the Arizona Legislature and by Article 2, §§ 4 and 8 of the Arizona Constitution as well as by previous ruling of this Court.

When the Legislature passed a bill authorizing a statewide grand jury, I am sure it did not mean that the Attorney General could act as if the statute were a direct authorization for that office to grab the business records of any corporation it saw fit to investigate. Nor, indeed, would the Arizona Constitution allow such summary and arbitrary action on the part of the State. In a well reasoned 1966 opinion (see *Wales v. Tax Commission,* infra) this Court set down guidelines for grand jury investigations which the majority opinion ignores.

## STATUTORY LIMITS

In 1975 the Arizona Legislature passed a state grand jury bill, now 7 A.R.S. §§ 21–421 et seq., granting such grand juries the authority to investigate the offenses listed in § 21–422(B), including securities and land fraud and other crimes of statewide importance. This statute makes it clear that while the Attorney General of Arizona is responsible for requesting that a grand jury be convened, § 21–421(B), and for presentation of evidence to the grand jury, § 21–424, and for prosecuting all indictments returned by the grand jury, § 21–427(B), the Attorney General is in many ways the servant of the Grand Jury. Section 21–427(A) states that "[t]he attorney general or his designee, shall attend the state grand jury in the manner prescribed by § 21–408" which states in part:

"§ 21–408 Attendance of prosecuting attorney

A. The county attorney or other prosecuting officer shall attend the grand jurors when requested by them, and may do so although not requested for the purpose of examining witnesses, in their presence, or of giving the grand jurors legal advice regarding any matter cognizable by them. He shall also, *when requested by them,* draft indictments and *cause process to issue* for the attendance of witnesses and other evidence." (Emphasis supplied.)

And § 21–427(C) states that "[t]he attorney general or his designee shall have authority to issue subpoenas for witnesses statewide *for the grand jury* in accordance with the

provisions of title 13, article 2, chapter 7" (emphasis added) which states in part:

"§ 13–1821 Subpoena; issuance; duty of clerk

\* \* \* \* \* \*

B. The subpoena may be signed and issued:

1. By a magistrate before whom a complaint is laid for witnesses, either on behalf of the state or defendant.

2. By the county attorney for witnesses for the prosecution, or for such other witnesses *as the grand jury upon an investigation pending before it may direct,* or for witnesses on an indictment or information to appear before the court in which the indictment or information is to be tried.

3. By the clerk of the court in which an indictment or information is to be tried." (Emphasis supplied.)

The above statutory provisions make it clear that while the Attorney General has an important role, it is the grand jury that is the decision making body.[1]

The very fact that the Legislature passed the grand jury bill indicates that the Legislators intended to interpose the citizen members of the grand jury between the government prosecutor and the individual suspected of wrongdoing. Some states have statutes allowing the Attorney General to investigate on his own, e. g. Ark.Stats. §§ 43–801—43–803 (1964). That our Legislature did not choose that path shows that they wished the grand jury to play its traditional role as a shield, protecting the innocent from ill-founded prosecution and harassment.[2]

For the foregoing reasons I find that the Legislature intended the Attorney General to consult with the grand jury before instituting an investigation by issuing a subpoena duces tecum such as the one here. If the Attorney General has good reason to investigate a crime he must communicate with the grand jury so that body can authorize an investigation. Then when a subpoena is issued pursuant to A.R.S. § 21–427 there will truly be a grand jury investigation as contemplated by the State Grand Jury Statute; the grand jury can act as a check on potential abuse.

### CONSTITUTIONAL LIMITS

Not only is the Attorney General required to act through—not independently of—the grand jury but due process and fairness require that the board and even awesome powers of the grand jury must not be summoned unless there is some reason on record to justify involving an individual citizen or a corporation in an investigation. As this Court stated in *Wales v. Tax Commission*, 100 Ariz. 181, 183–84, 412 P.2d 472, 474 (1966):

"As stated, the response suggests that the Pima County Grand Jury is presently investigating certain named individuals. The function of a grand jury is to investigate criminal offenses, not the conduct of individuals. Rule 92, Rules of Criminal Procedure, 17 A.R.S. It is not permitted to speculate that some person might have committed an offense and, therefore, to investigate individuals to determine what, if any, offenses may possibly have been committed by them.

---

1. In an analogous situation, the D.C. Circuit discussed the illegality of the United States Attorney issuing a grand jury subpoena for its own purposes. *Durbin v. United States*, 94 U.S.App.D.C. 415, 221 F.2d 520 (1954). In ordering an indictment dismissed due to improper use of a subpoena, the court reasoned:

"'The Constitution of the United States, the statutes, the traditions of our law, the deep rooted preferences of our people speak clearly. They recognize the primary and nearly exclusive role of the Grand Jury as the agency of compulsory disclosure.' They do not recognize the United States Attorney's office

as a proper substitute for the grand jury room and they do not recognize the use of a grand jury subpoena, a process of the District Court, as a compulsory administrative process of the United States Attorney's office." (footnotes omitted.) 221 F.2d at 522.

2. Numerous critics have advocated abolition of the grand jury because of well-documented abuse. See, e. g., Morse, A Survey of the Grand Jury System, 10 Ore.L.Rev. 101 (1931). I wish to emphasize, however, that I am speaking hypothetically and imply no wrong-doing on the part of the current Attorney General or anyone in his office.

'Investigations [by grand juries] for purely speculative purposes are odious and oppressive and should not be tolerated by law. Before they may be instituted, there must be knowledge or information that a crime has been committed. There is no power to institute or prosecute an inquiry on chance or speculation that some crime may be discovered. *Matter of Morse,* 42 Misc. 664, 87 N.Y.S. 721.' *Petition of McNair,* 324 Pa. 48, 187 A. 498, 504, 106 A.L.R. 1373. (Emphasis supplied.) Such investigations are plainly tyrannical, lending themselves to abuses for politically or maliciously inspired purposes. They are beyond the scope of the inquisitorial powers of a grand jury and are not to be allowed."

Two provisions of our State Constitution underlie the requirement that grand jury investigations be instituted only upon some sort of reasonable basis. The first pertinent provision, Article 2, § 4 states:

"§ 4 Due process of law

Section 4. No person shall be deprived of life, liberty, or property without due process of law."

It is unchallenged that at least some due process requirements apply to grand jury proceedings. E. g., *Hale v. Henkel,* 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906); *People v. DiPonio,* 48 Mich.App. 128, 210 N.W.2d 105 (1973). Conceding that the grand jury's function is to investigate and that therefore it must have wide latitude, still due process in Arizona requires at a minimum that there be some reason for instituting an investigation in the first place. Nationwide news media focus on land fraud, for example, is not a constitutionally sufficient reason to investigate a particular Arizona land sales corporation. The grand jury must have before it some indication of criminal fraud and some indication of that particular corporation's possible connection with the crime. Such a prerequisite is not only mandated by the constitutional provision but will also in no way hamper the grand jury's investigative function.

The second pertinent constitutional provision states:

"§ 8 Right to privacy

Section 8. No person shall be disturbed in his private affairs, or his home invaded, without authority of law."

A subpoena duces tecum issued by a grand jury, such as the one in this case, can be a very great intrusion. Such an intrusion is authorized by law only in the circumstances described above: when the grand jury has some indication that a crime has been committed.

I am fully aware that this particular opinion deals with a subpoena duces tecum served on a corporation, not upon an individual person. I am also fully aware that the federal courts, particularly in the grand jury context, have ruled that many federal constitutional rights do not apply to corporations. E. g., *Oklahoma Press Pub. Co. v. Walling,* 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946) (self incrimination).

Such rulings may be both logical and just when it is merely the corporation's property which is at stake, for example when the criminal penalty is a fine. But when individual persons are subject to incarceration, then it is a cruel and unjust fiction to talk about the corporation not having a constitutional right; for it is a person who may have to go to prison. This State is free to provide an individual with greater protection under our State Constitution than do federal courts under the Federal Constitution. E. g. *Lanier v. State,* 486 P.2d 981 (Alaska 1971); *Bunnell v. Superior Court,* 13 Cal.3d 592, 119 Cal.Rptr. 302, 531 P.2d 1086 (1975); *State v. Opperman,* 247 N.W.2d 673 (S.D.1976). See, *Zale-Las Vegas, Inc. v. Bulova Watch Company,* 80 Nev. 483, 396 P.2d 683 (1964); *Dean v. Crisp,* 536 P.2d 961 (Okl.Cr.1975); *General Electric Company v. Thrifty Sales,* 5 Utah 2d 326, 301 P.2d 741 (1956); Cf. *Turley v. State,* 48 Ariz. 61, 59 P.2d 312 (1936). The Supreme Court of South Dakota stated in a recent search and seizure opinion:

"Admittedly the language of Article VI, § 11 is almost identical to that found in the Fourth Amendment; however, we

have the right to construe our state constitutional provision in accordance with what we conceive to be its plain meaning. We find that logic and a sound regard for the purposes of the protection afforded by S.D. Const., Art. VI, § 11 warrant a higher standard of protection for the individual in this instance than the United States Supreme Court found necessary under the Fourth Amendment." *State v. Opperman*, 247 N.W.2d 673, 674–675 (S. D.1976) (footnote omitted). That court's reasoning applies here. It defies logic to assume that our Constitution provides protection only if the individual is not an officer or employee of a corporation. Since individuals may be held to account for any crimes found by the grand jury in its investigation of corporate wrong doing, the individuals must receive the protections accorded to everyone under our Constitution.

## JUDICIAL CONTROL

The Legislature passed a state grand jury act which by its own terms provides restrictions upon the scope and authority of the grand jury and of its prosecutor, the Attorney General. In fact, the act has even been criticized as too restrictive of the grand jury's powers.[3] 1975 Ariz. State L.J. 841. The subject matter jurisdiction of the grand jury is limited, for example, A.R.S. § 21–422(B). There would be no reason to include such a restriction if Superior Courts do not have the power to quash a subpoena issued pursuant to an investigation which is not within the proper subject matter jurisdiction. Surely the Legislature did not contemplate that the grand jury waste its time and a citizen be harassed with an illegal investigation simply because there is no remedy until after an indictment issues. In addition, the constitutional protections discussed supra are always amenable to enforcement by the courts of Arizona. Thus, I am convinced that certain minimal protec-

tions provided by the statute and by our Constitution are enforceable in Superior Court by a motion to quash a subpoena.

A 1973 decision of the Supreme Court of Colorado is compelling on this issue. *Gher v. District Court*, 183 Colo. 316, 516 P.2d 643 (1973). The decision involved a grand jury subpoena duces tecum issued for voluminous records of a school district. The prosecutor's brief alleged that the purpose of the subpoena was to elicit information which "might establish the commission of a crime." The court found that even if the stated purpose were genuine, the breadth of the subpoena required close judicial scrutiny. The court then found that the record reflected absolutely no legal criminal investigatory purpose and ordered the subpoena quashed. I will quote the court's reasoning because it represents a sound historical and logical analysis of the power of the courts to curb abuse of grand jury power:

"A grand jury may not, in the absence of enabling legislation, act in civil matters or exercise its authority to harass another governmental body for political or civil purposes. No statutory authority exists in Colorado which permits a grand jury to extend its investigatory jurisdiction into a civil or political annexation dispute by the hollow assertion that the inquiry has criminal overtones.

A grand jury has historically functioned not only as an accusatory body, but also as an investigatory body. In carrying out its investigative function, the grand jury serves as a buffer between the state and its citizens by screening accusation of criminal activity to determine whether the evidence is so insubstantial that charges should not be brought. (Citations omitted.) Admittedly, the grand jury has broad investigatory powers, but only in matters which relate to possible criminal activity.

We have no intention of restricting the broad powers of the grand jury or to

**3.** The proposed act was modeled after the New Jersey State Grand Jury Act, N.J.Stat.Ann. §§ 2A:73A–1 et seq. (1976). The changes made by the Arizona Legislature in passing the bill were generally restrictive. For example, Arizo-na is one of only two states (of six states) which limits the kinds of crimes which the grand jury can investigate. See generally, 1975 Ariz. State L.J. 841. See also discussion, supra, of the attorney general's powers.

grant standing to every witness to suppress evidence that has been properly subpoenaed for the grand jury. (Citations omitted.) However, when a grand jury subpoena is being used for purposes apart from an effort to ferret out criminal activity or other statutorily authorized purposes, the courts must intervene to prevent a gross abuse of the judicial process. *Hale v. Henkel*, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906); *In re Schofield,* 486 F.2d 85 (3d Cir. 1973). *See also Petition of McNair*, 324 Pa. 48, 187 A. 498, 106 A.L.R. 1373 (1936)." 516 P.2d at 644–45.

The Third Circuit has consistently upheld the power of courts to supervise grand jury subpoenas. The guidelines were set in *In re Grand Jury Proceedings (Schofield)*, 486 F.2d 85 (3d Cir. 1973). The court in *Schofield* discussed and listed a large body of cases recognizing defenses to grand jury subpoenas duces tecum. In a detailed analysis the court set down requirements which must be met before a district court will enforce a grand jury subpoena for documents and records. The burden of showing regularity was put upon the government because it controls all the relevant information. The government is required to show in a sworn affidavit that (1) the grand jury has jurisdiction to investigate the matter, (2) the subpoenaed material is relevant to that proper investigation, and (3) the absence of a paramount, unrelated purpose. *Accord, U.S. v. Gurule*, 437 F.2d 239 (10th Cir. 1970). Here I must strongly disagree with the majority: the burden must be on the government when a witness challenges a subpoena duces tecum on the basis that the grand jury is totally without jurisdiction or that the subpoena is without a proper investigatory basis. The burden cannot rationally be on the witness. If he alleges that the investigation has absolutely no basis, he cannot put his whole life before the court in order to show that there is no crime to be investigated. A reasonable solution is for the government, when challenged, to provide a sworn affidavit as to jurisdiction and relevance to a proper investigation.

The *Schofield* court believed that their rule represents a proper balance between the needs of the grand jury and the privacy needs of individual. Judge Seitz said in concurrence: "It seems to me that such a minimal requirement is almost indispensible if citizens are to be afforded minimum protection against the possible arbitrary exercise of power by a prosecutor through the use of the grand jury machinery." 486 F.2d at 94. I strongly agree. Judge Seitz also stressed (as did the same court in a later opinion, *Matter of Grand Jury Impaneled January 21, 1975*, 529 F.2d 543 (3d Cir. 1976), cert. denied, 425 U.S. 992, 96 S.Ct. 2203, 48 L.Ed.2d 816) that the court review of the subpoena was not to be an adversary hearing. This aspect is important so as to avoid the "mini trial" feared in *United States v. Dionisio*, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973).

Arizona has a history of judicial control of grand jury abuse. E. g. *State v. Good*, 10 Ariz.App. 556, 460 P.2d 662 (1969); *State v. Von Reeden*, 9 Ariz.App. 190, 450 P.2d 702 (1969); *Corbin v. Broadman*, 6 Ariz. App. 436, 433 P.2d 289 (1967). It is in keeping with this tradition that I urge Arizona to follow Colorado in the *Gher* decision.

In order for the courts to be able to review the issuance of a subpoena duces tecum and the instigation of an investigation, the reasons underlying the action should appear in the record. The transcript of the grand jury proceedings will show whether the prosecutor presented some sort of information to the grand jury which led the grand jury to authorize an investigation or whether the grand jury independently provided a proper basis for the investigation. If either situation exists, the prosecutor can easily give a sworn affidavit to the court that a proper purpose for investigation exists and a motion to quash a subpoena will be denied. If there is no proper purpose for the investigation, the court can quash the subpoena, thereby halting an illegal and unconstitutional invasion of privacy.

## CONCLUSION

The Legislature in enacting the Grand Jury Act and the Constitution of the State of Arizona placed restrictions on the grand jury and upon the prosecutor. The discussion,[4] supra, of these restrictions may be summarized by a single requirement: a grand jury investigation may be instituted only when the grand jury has some reason to believe that a crime has been committed. A subpoena duces tecum can issue only under such circumstances. The courts of Arizona have the power to enforce this requirement, for otherwise the tyranny which Justice Struckmeyer feared in the *Wales* decision, quoted supra, will prevail.

For the foregoing reasons, I respectfully concur in part and dissent in part.

CAMERON, C. J., concurs.

4. My discussion presents only general guidelines for judicial supervision of the procedural aspects of grand jury investigations because it seems wisest to decide these issues on a case by case basis rather than try to conjure up hypothetical situations.