**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

v.

**Steven D. RICKARD, Defendant–Appellee.**

**No. 86SA386.**

Supreme Court of Colorado, En Banc.

Sept. 12, 1988.

Robert A. Chapell, Chief Deputy Dist. Atty., John A. Hower, Deputy Dist. Atty., Littleton, for plaintiff-appellant.

Bruno, Bruno & Colin, P.C., Louis B. Bruno, James C. Coyle, Michele M. Lawonn, Lakewood, for defendant-appellee.

ERICKSON, Justice.

The prosecution appeals the dismissal of a grand jury indictment. On April 24, 1986, a grand jury returned a four-count indictment against respondent Steven D. Rickard. Rickard moved to dismiss the indictment claiming that the secrecy of the grand jury proceedings required by Crim.P. 6.2 was breached by the district attorney and grand jury investigators. The district court granted the motion and dismissed the indictment, finding that the prosecution and investigators violated Crim.P. 6.2 and the court's grand jury instructions by disclosing information obtained during grand jury proceedings. We reverse and remand with directions.

## I.

Rickard was employed by the Denver Police Department. He also owned and operated two companies, Police Security Service (Security Service) and Metro Denver Auto Service (Metro Denver). Security Service scheduled off-duty police officers to perform security services at two shopping centers owned by Trammell Crow Company (Trammell). Based on billings prepared by Rickard, Trammell paid Security Services

with a single check for services rendered by several off-duty officers. Security Service's receipt of one check for work performed by several different officers violated section 114 of the Denver Police Department Operations Manual, which required Trammell to pay officers individually. Rickard attempted to conceal his evasion of section 114 by signing the name Brook Baldridge on paychecks given to individual officers for their off-duty work. During 1985, Rickard received $26,293.79 in net income from Trammell based on security services he allegedly rendered. However, the indictment states that at $13.50 per hour it was physically impossible for Rickard to receive more than $17,840.25.

Metro Denver operated a tow truck at one of Trammell's properties. Rickard informed the Ethics Board of the Denver Police Department that the truck would be used only to provide jump starts and to open locked vehicles for patrons and Trammell employees. The Board granted Rickard and his company permission to own and operate the truck for the specified purposes, but expressly prohibited Metro Denver from providing towing services. Metro Denver nevertheless towed and impounded several illegally parked vehicles owned by patrons of one of Trammell's shopping centers. The automobiles were returned to their owners after fees ranging from $10 to $50 were paid to Metro Denver. Metro Denver's conduct violated towing ordinances, 54–419, 55–176, and 55–186(a), and Denver police towing procedures.

Based on the overbilling of Trammell by $8,453.54 and Rickard's improper operation of Metro Denver, a four-count indictment was returned April 24, 1986. Rickard was charged in two counts for violating section 18–4–401, 8 C.R.S. (1978 & 1985 Supp.) (theft), and in two counts for violations of section 18–8–104, 8 C.R.S. (1978 & 1985 Supp.) (obstructing a police officer). Rickard moved to dismiss the indictment asserting that, prior to the grand jury's deliberations, the secrecy of the grand jury's proceedings was breached by the prosecution on at least two occasions. The first breach involved Officer John C. Johnson, who testified that on March 28, 1986, he was interrogated by grand jury investigators Captain Steve Jeffries and Sergeant Daniel Yount. He stated that the investigators showed him a grand jury exhibit, a check for $781, and told him that other witnesses testified differently than he did about the check. The second incident involved a conversation between the defendant and Yvonne Azar (Azar), a deputy district attorney. Azar revealed what had been told to her in confidence by another district attorney; specifically, that a grand juror asked Johnson whether Johnson's memory was impaired by mind-altering drugs.

The district court dismissed the indictment, concluding that the prosecution violated Crim.P. 6.2(a) and the court's instructions to the grand jury [1] by disclosing infor-

---

1. The court's instructions to the grand jury provided in relevant part:

    8. The solemn oath that you have taken and the law require you to keep secret your own counsel, and that of your fellow jurymen, touching your present service. You have already promised that in all your indictments you will present the truth, the whole truth, and nothing but the truth. Having taken such a solemn oath, and the law requiring you to keep your proceedings secret, under no circumstances should you divulge to anyone what has taken place in your jury room, either by disclosing the name of any witness who may be appearing or has appeared before you, the subject matter of his or her testimony, or the name of any person who is being investigated, and whether or not a true bill has been found in any particular case. It is highly important that every true bill shall be kept secret in order to give the authorities an opportunity to apprehend the person indicted before he or she has had an opportunity to flee the jurisdiction of this Court.

    That matter of secrecy is of further importance in that there should not be disclosed to the public the investigation of any individual where a true bill has not been found, by reason of the fact that injury might result to such person from the mere fact of his having been investigated by you. In this connection, it is important to emphasize that it is as much your duty to protect the innocent, as to indict those probably guilty, and protection of the innocent from unjust prosecution requires that you protect them from the injury which might result from public knowledge that any person has ever been even suspected of a crime.

    For very obvious reasons, you are to keep secret the subject matter of the evidence given to you by witnesses and your communications

mation from the grand jury's proceedings to Johnson, a grand jury witness, and Rickard. In dismissing the indictment, the court made no factual findings as to whether Rickard was prejudiced by the disclosures.[2]

## II.

The prosecution asserts that the court abused its discretion in dismissing the indictment based on the breaches of secrecy. The prosecution concedes that the disclosure of evidence presented to the grand jury by Azar to Rickard was a violation of Crim.P. 6.2(a), but contends that there were no other breaches of grand jury secrecy. We agree that the only breach of secrecy occurred when Azar disclosed grand jury testimony to Rickard.

### A.

Rule 6.2(a) of the Colorado Rules of Criminal Procedure provides:

All persons associated with a grand jury and its investigations or functions should at all times be aware that a grand jury is an investigative body, the proceedings of which shall be kept secret. Witnesses or persons under investigation should be dealt with privately to insure fairness. The oath of secrecy shall continue until

such time as an indictment is made public, if an indictment is returned, or until a grand jury report is issued dealing with the investigation. Nothing in this rule shall prevent a disclosure of the general purpose of the grand jury's investigation by the prosecutor.

The rule embodies the long-established policy that grand jury proceedings should be maintained in secrecy. *See United States v. Johnson,* 319 U.S. 503, 513, 63 S.Ct. 1233, 1238, 87 L.Ed. 1546 (1943) (grand jury secrecy is "indispensable"). "[T]he proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 218, 99 S.Ct. 1667, 1672, 60 L.Ed.2d 156 (1979). In *Granbery v. District Court,* 187 Colo. 316, 531 P.2d 390 (1975), we tempered the application of the secrecy doctrine by stating that "[s]ecrecy for secrecy's sake should no longer be the rule in Colorado. Rather, the maintenance of the wall of secrecy around grand jury testimony should be grounded upon sound reason." 187 Colo. at 320, 531 P.2d at 393 (quoting *Parlapiano v. District Court,* 176 Colo. 521, 527, 491 P.2d 965, 968 (1971)). "When disclosure is permitted it must be done discreetly and limitedly, and only when a compelling need outweighs the countervailing policy of secre-

with each other. And, in fact, you are to maintain secrecy with respect to all matters which you are investigating, including the final determination of any true bill by you. In addition, the court read Crim.P. 6.2(a) to the grand jury.

2. The trial judge stated:

I'm looking at, perhaps, a larger issue, and I won't disagree with the argument of the special prosecutor to the effect, as I have indicated earlier, at this particular point in this particular case, there *may* not have been any probability of prejudice against the defendant. However, *because the breach is that possibility,* I think we go back to secrecy for secrecy's sake falls short of the meaning of the Grand Jury process. The Grand Jury process, of necessity, must be totally secret.

When that particular principle is delineated in detail by the presiding Judge of the Grand Jury in his instructions to the Grand Jury, it makes it even more serious that any breach be dealt with drastically. As Justice Kelley

said in the *Lewis* case [*People v. Lewis,* 183 Colo. 236, 516 P.2d 416 (1973)]: "The Court's instructions to the Grand Jury on how [its] investigation should be conducted were designed to assure an orderly development and presentation of evidence in a calm and dignified atmosphere; they were not intended to permit an open forum in which the investigators [in this particular case, in which deputy district attorneys, unfortunately] acted as advocates. The procedures set forth in the Judge's instructions were to protect the rights of those under investigation, and ... necessarily [not] to work [to the] prejudice against those under investigation [and to protect the innocent]...."

(Quoting *Lewis,* 183 Colo. at 241, 516 P.2d at 418) (emphasis added).

The parties disagree whether the court made a factual finding that Rickard was not prejudiced by the misconduct. As we read the order, the trial court made no factual finding of prejudice but inferred prejudice based solely upon the fact that the grand jury's secrecy was breached.

cy." *Id.*, 187 Colo. at 320, 531 P.2d at 392.[3] Grand jury secrecy is intended only to prevent disclosure of what transpires or will transpire before the grand jury. *See Granbery*, 187 Colo. at 322, 531 P.2d at 393.

### B.

Prior to his testifying before the grand jury, Johnson was interrogated by grand jury investigators, who were members of the Denver Police Department's Internal Affairs Bureau. After testifying before the grand jury, Johnson was interrogated by grand jury investigators Jeffries and Yount. The investigators asked Johnson about a personal check which Rickard issued to him in the amount of $781.20. The cancelled check was later produced for the grand jury by Rickard. The check allegedly established that Johnson was paid by Rickard for services rendered to Trammell

in June, 1985. Johnson, however, testified before the grand jury that he had not worked for Trammell during May and June of 1985. During the interrogation, the investigators asked Johnson about the check and parts of his grand jury testimony. They did not tell him that the check was a grand jury exhibit. He was informed that at least two other grand jury witnesses had testified differently than he had. The investigators did not disclose to Johnson the identity of the witnesses or the content of the witnesses' testimony.[4] They warned Johnson that a perjury conviction under sections 18-8-501 to -509, 8B C.R.S. (1986), required that a defendant's testimony be contradicted by the testimony of only two witnesses. They told him that he might lose his job and be convicted of perjury if he did not change his testimony before the grand jury reconvened. Johnson never

---

3. *People ex rel. Losavio, Jr. v. J.L.* identified five reasons for the secrecy of grand jury proceedings:

    (1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witness who may testify before [the] grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect the innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.

    195 Colo. 494, 502, 580 P.2d 23, 28 (1978) (quoting *United States v. Amazon Indust. Chem. Corp.*, 55 F.2d 254 (D.Md.1931)); *see also Granbery*, 187 Colo. at 321, 531 P.2d at 393.

4. In his affidavit, Johnson claimed:

    That said investigators advised me that other witnesses before the grand jury, at least two in number, had testified differently than I had; that the grand jury was considering the filing of perjury charges against me and that I had approximately two weeks to voluntarily return to the grand jury and to "correct" my earlier testimony; that the Defendant Steven Rickard had testified differently than I had regarding the above-referenced check in the sum of $781.00, differently regarding my off duty security work at an office building and differently regarding my presence at the Rob-

ert Watson residence during the PGA Tournament during 1985; that throughout the course of this subsequent interrogation, frequent references were made to a copy of my grand jury testimony and that when I left the Internal Investigation and Inspections Bureau on March 28, 1986, it was my distinct impression from what had been said to me by Investigators Jeffries and Yount that at least one other person before the grand jury in addition to the Defendant Steven Rickard had testified substantially differently than I had and that perjury charges would be shortly forthcoming against me; that this interview and the circumstances surrounding the same were immediately reported to my attorney Robert Dill.

    At the hearing on the alleged breaches of grand jury secrecy, Johnson conceded that he was never told the identity of the witnesses who contradicted his testimony. He inferred from the questions of the investigators that one of the witnesses was Rickard. He said that at no time during the interrogation did investigators read to him the grand jury testimony of other witnesses. He could not recall whether he was specifically told by the investigators that other witnesses contradicted his testimony concerning his work at Trammell's office building. He was certain that investigators informed him that other witnesses contradicted his testimony concerning his presence at Watson's residence. He testified before the grand jury that he had not provided security for Trammell at its office building during May and June, 1986, and that he supervised the children of Robert Watson, a senior partner in Trammell Crow, during the PGA tournament.

changed his grand jury testimony and was not charged with perjury.

■ In view of the reasons for grand jury secrecy, we conclude that the conduct of grand jury investigators violated neither Crim.P. 6.2(a) nor the grand jury instructions. In questioning Johnson, the investigators disclosed only parts of Johnson's own testimony; they avoided revealing any other specific information about the grand jury proceedings. Additionally, they gave Johnson an opportunity to modify his testimony to avoid being charged with perjury.

■ The purpose of a grand jury investigation is to discover facts that will enable the grand jury to determine whether formal charges should be filed. *See People v. Maestas,* 199 Colo. 143, 146–47, 606 P.2d 849, 851–52 (1980). In questioning Johnson, the investigator endeavored to insure that only reliable evidence was before the grand jury and that the charges against Rickard were supported by probable cause. *Id.* (purpose of grand jury is to investigate possible offenses and to act as an independent barrier protecting the innocent from prosecution); *Gher v. District Court,* 183 Colo. 316, 516 P.2d 643 (1973) (grand jury acts not only as accusatory body but also as investigative body). Under the facts, the conduct of the investigators did not breach the secrecy of the grand jury.

### C.

David W. Hackenbach, the chief deputy district attorney in the Denver District Attorney's office, told Azar that a member of the grand jury had asked if Johnson had taken "mind-altering drugs" that caused him to lose his memory. Azar was listed as a potential witness before the grand jury and Hackenbach admonished her on two occasions that she was under an oath of secrecy not to disclose the information to anyone. Despite Hackenbach's admonitions, Azar informed Rickard of the grand juror's question after Rickard testified before the grand jury. Azar did not testify to the grand jury.

■ Hackenbach's disclosure of confidential grand jury information to Azar did not violate grand jury secrecy. Since only one or two prosecutors ordinarily appear before the grand jury, provision must be made, as a matter of practical necessity, for disclosure by those attorneys to other members of the prosecutor's staff.[5] 1 W. LaFave & J. Israel, *Criminal Procedure* 632 (1984). Most jurisdictions allow disclosures of grand jury information to members of the prosecutorial staff without a court order. *Id.;* 1 C. Wright, *Federal Practice and Procedure* § 107 (1982 & 1987 Supp.); *see, e.g., United States v. Kilpatrick,* 821 F.2d 1456 (10th Cir.1987) (Fed.R.Crim.P. 6(e) permits federal employees assisting grand jury prosecutor to access grand jury materials without court order provided the materials are used to assist government attorneys in enforcing federal criminal laws), *aff'd,* —— U.S. ——, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988); *United States v. Cook,* 794 F.2d 561 (10th Cir.1986), *cert. denied,* 479 U.S. 889, 107 S.Ct. 288, 93 L.Ed.2d 262 (1986). Since Azar was a deputy district attorney in the prosecutor's office, grand jury information could be disclosed to her without a court order. The fact that she was a potential grand jury witness is not dispositive because she never testified before the grand jury. It was, however, improper for Azar to tell the defendant that the grand jury questioned Johnson about his use of drugs. We therefore conclude that Azar violated the secrecy of the grand jury by disclosing confidential information to Rickard. However, the issue is whether dismissal of the indictment based on the breach of grand jury secrecy was an abuse of discretion.

### III.

■ In reliance on *People v. Lewis,* 183 Colo. 236, 516 P.2d 416 (1973), Rickard

---

**5.** The trial court issued an order dated January 15, 1986, permitting disclosure of grand jury materials to, *inter alia,* the "District Attorney, duly sworn deputies, [and] members of the District Attorney's staff who have been sworn in as Grand Jury Investigators." The order only pertained to certain materials acquired before the grand jury convened on March 20, 1986. Testimony elicited before the grand jury was not covered by the order.

claims that while the grand jury is in session any breach of secrecy that violates Crim.P. 6.2 and the court's instructions to the grand jury prejudices the grand jury system and justifies dismissal of the indictment, even though the defendant was not prejudiced by the prosecutorial misconduct. In our view, dismissal of the indictment is only warranted for violations of grand jury secrecy if the defendant was prejudiced by the improper disclosures.

An affirmative showing of prejudice by a defendant is necessary to justify dismissal of an indictment based on prosecutorial misconduct before the grand jury. *See People v. Meyers,* 617 P.2d 808 (Colo.1980).[6] In *People v. Lewis,* we upheld the trial court's finding of prejudice based on the serious nature of the prosecutorial misconduct. In *Lewis,* grand jury investigators, who were not under oath, acted in dual roles as prosecutors and witnesses by interrogating grand jury witnesses and making comments to the grand jury. The defendant moved to dismiss the grand jury's indictments and the trial court granted the motion. The prosecution appealed, contending that the trial court erred because the defendant had made no affirmative showing of prejudice. In affirming the trial court, we stated:

> The court's instructions to the grand jury on how its investigation should be conducted were designed to assure an orderly development and presentation of evidence in a calm and dignified atmosphere; they were not intended to permit an open forum in which the investigators acted as advocates. The procedures set

forth in the judge's instructions were to protect the rights of those under investigation, and deviations, *such as shown here, necessarily work to the prejudice of those under investigation.*

183 Colo. at 241, 516 P.2d at 418 (emphasis added).

■ The conduct of the prosecution in this case was improper but did not warrant dismissal of the indictment absent factual findings of prejudice to Rickard. The misconduct was not so severe as to justify the presumption of prejudice which we made in *Lewis.* Unlike the investigators in *Lewis,* the prosecution in this case did not act in a dual role, but did disclose information, already known by the grand jury, to outsiders. *See* 2 W. LaFave & J. Israel, *supra,* at 329–30 (courts discussing breaches of secrecy in grand jury proceedings have suggested that even the most flagrant violation—a purposeful leak to the press—would not justify dismissing an indictment since the violation itself would not create a reasonable likelihood of prejudice). The fact that the disclosure violated instructions to the grand jury is not dispositive of the issue. The instructions simply reiterated the secrecy requirement of Crim.P. 6.2(a) and their violation was not a *per se* denial of due process. The prosecution's failure to follow the instructions did not, as in *Lewis,* prevent "an orderly development and presentation of evidence in a calm and dignified atmosphere." 183 Colo. at 241, 516 P.2d at 418.

The *per se* rule urged by Rickard would require that all violations of grand jury

---

6. When grand jury secrecy is breached, state and federal courts are virtually unanimous in requiring an affirmative showing of prejudice to the defendant before the indictment will be dismissed. 2 W. LaFave & J. Israel, *supra,* at 322–23, 329–30; *see, e.g., United States v. Kilpatrick,* 821 F.2d 1456 (10th Cir.1987), *aff'd,* — U.S. —, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988); *United States v. McKenzie,* 678 F.2d 629 (5th Cir.), *cert. denied,* 459 U.S. 1038, 103 S.Ct. 450, 74 L.Ed.2d 604 (1982); *United States v. Stone,* 633 F.2d 1272 (9th Cir.1979). Prejudice exists if the misconduct significantly infringed upon the grand jury's ability to exercise independent judgment or if the misconduct influenced the grand jury's decisionmaking function. *Kilpatrick,* 821 F.2d at 1475; 2 W. LaFave & J.

Israel, *supra,* at 322. *But see,* Annotation, *Presence of Persons not Authorized by Rule 6(d) of Federal Rules of Criminal Procedure During Session of Grand Jury as Warranting Dismissal of Indictment,* 68 A.L.R.Fed. 798 (1984 & 1987 Supp.) (most federal courts treat presence of unauthorized persons during grand jury proceedings, in violation of Fed.R.Crim.P. 6(d) as sufficient grounds to set aside indictment without a showing of prejudice); Annotation, *Presence of Unauthorized Persons During State Grand Jury Proceedings as Affecting Indictment,* 23 A.L.R. 4th 397 (1983 & 1987 Supp.) (jurisdictions split whether showing of prejudice required to justify dismissal of indictment based on presence of unauthorized persons during grand jury proceedings).

secrecy require dismissal of an indictment. We are not prepared to impose so strict a rule on grand jury proceedings. The rule articulated by the United States Supreme Court in *Bank of Nova Scotia v. United States*, —— U.S. ——, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988), is applicable to the facts of this case. When errors that are not of constitutional dimension are raised, a harmless error analysis provides the proper criteria for review. Dismissal of an indictment on the grounds of prejudice is appropriate only "if it is established that the violation substantially influenced the grand jury's decision to indict," or if there is "grave doubt" that the grand jury's decision to indict was not substantially influenced by the violations. *Id.*, 108 S.Ct. at 2374 (quoting *United States v. Mechanik*, 475 U.S. 66, 78, 106 S.Ct. 938, 945–46, 89 L.Ed.2d 50 (1986)). The determination of whether violations of grand jury secrecy prejudiced the accused, and was not harmless error, depends upon the facts in each case.[7] Under the facts of this case, it is difficult to conceive how Rickard would be prejudiced by the disclosures made to him. However, that issue is best resolved by the trial court. In our view, the dismissal of an indictment, absent factual findings that the defendant was prejudiced, is an abuse of discretion. *See* 2 W. LaFave & J. Israel, *supra*, at 324 ("each misconduct dismissal tends to stand on its own facts").

Because the trial court made no factual findings whether Rickard was in fact prejudiced by the prosecution's improper disclosure, we reverse the trial court and remand for further proceedings consistent with this opinion.

LOHR, J., concurs in part and dissents in part.

QUINN, C.J., and KIRSHBAUM, J., join in the concurrence and dissent.

LOHR, Justice, concurring in part and dissenting in part:

I agree with the majority that David W. Hackenbach's disclosure of grand jury information to Yvonne Azar, a member of his prosecutorial staff, did not violate Rule 6.2(a) of the Colorado Rules of Criminal Procedure. I also agree that Azar's disclosure of this information to the defendant, Steven D. Rickard, violated the secrecy of the grand jury. Contrary to the majority, however, I would hold that a breach of grand jury secrecy also occurred when the grand jury investigators confronted Officer Johnson with the news that at least two other grand jury witnesses had testified differently than had Johnson. Finally, I cannot agree that dismissal of a grand jury indictment for breach of secrecy is justified only if prejudice to the defendant is affirmatively demonstrated. Accordingly, I would reverse the trial court and remand for a determination of whether either instance of disclosure of confidential grand jury information warrants dismissal of the indictment.

Turning first to the grand jury investigators' disclosure to Johnson, I would characterize the investigators' conduct as a violation of Crim.P. 6.2(a). That the investigators did not disclose the identity of the other grand jury witnesses or the precise content of their testimony cannot obscure the fact that the information provided to Johnson had its source in the grand jury proceedings and breached the veil of secrecy imposed by Crim.P. 6.2(a). The majority

---

**7.** Jurisdictions conflict regarding the necessary evidentiary showing to establish prejudice. Some courts require only a "reasonable likelihood" that the misconduct influenced the grand jury's decisionmaking function. 2 W. LaFave & J. Israel, *supra*, at 324; *see, e.g., State v. Good*, 10 Ariz.App. 556, 460 P.2d 662 (1969); *State v. Joao*, 53 Haw. 226, 491 P.2d 1089 (1971); *State v. Paulsen*, 286 N.W.2d 157 (Iowa 1979). Because it is difficult to find specific evidence establishing that the misconduct influenced the grand jury, serious misconduct will, absent specific evidence to the contrary, be presumed to establish the likelihood of prejudice. 2 W. LaFave & J. Israel, *supra*, at 324; Comment, *Grand Jury Proceedings: The Prosecutor, the Trial Judge, and Undue Influence*, 39 U.Chi.L.Rev. 761 (1972). Other courts focus on the strength of the evidence and will not find misconduct prejudicial if there is substantial evidence of guilt. 2 W. LaFave & J. Israel, *supra*, at 324; *see, e.g., United States v. Riccobene*, 451 F.2d 586 (3d.Cir.1971). Most jurisdictions agree that the defendant is not required to establish prejudice by presenting the testimony of grand jurors. 2 W. LaFave & J. Israel, *supra*, at 324.

cites no authority for the proposition that only a disclosure of the *specific content* of grand jury testimony would amount to a breach of grand jury secrecy, and I see no basis for such a rule. Furthermore, the use of testimony of some grand jury witnesses to persuade another to change his testimony under threat of loss of employment and prosecution for perjury tampers with the integrity of the grand jury process and is by no means the product of a compelling need outweighing the countervailing policy of secrecy as contemplated by *Granbery v. District Court*, 187 Colo. 316, 531 P.2d 390 (1975).

Having determined that grand jury secrecy has been breached, I would describe the standard for quashing the indictment somewhat differently than does the majority. While I agree that harmless error analysis should apply to grand jury secrecy violations, I would not limit the remedy of dismissal to cases in which the defendant can show prejudice in fact.

I understand the majority to say that there can be no dismissal of an indictment for breach of secrecy without a finding of prejudice; absent such a finding the error will be deemed harmless.[1] Maj. op. at 193–195. According to the majority, prejudice would exist "only if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the indictment was not substantially influenced by the violations." Maj. op. at 195. The United States Supreme Court provides the source for this rule in *Bank of Nova Scotia v. United States*, —— U.S. ——, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988) (applying a harmless error analysis based on Fed.R.Crim.P. 52(a), which is identical to Crim.P. 52(a)). The *Bank of Nova Scotia* Court, however, did not so narrowly limit its holding as to require actual prejudice in every case. The Supreme Court noted that a class of cases exists in which "indictments are dismissed, without a particular assessment of the prejudicial impact of the errors in each case,

because the errors are deemed fundamental." *Id.* 108 S.Ct. at 2375. In these cases, "the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the *presumption* of prejudice." *Id.* (emphasis added); *see also Vasquez v. Hillery*, 474 U.S. 254, 260–64, 106 S.Ct. 617, 622–24, 88 L.Ed.2d 598 (1986) (dismissal of indictment upheld where it could be presumed that racial discrimination in selection of grand jurors would prejudice the defendant); *Ballard v. United States*, 329 U.S. 187, 67 S.Ct. 261, 91 L.Ed. 181 (1946) (defendant presumed to be prejudiced where women had been intentionally and systematically excluded from the grand jury panel and any inquiry into harmless error would have required unguided speculation).

The principle that prejudice may be presumed in select cases comports with our decision in *People v. Lewis*, 183 Colo. 236, 516 P.2d 416 (1973). In *Lewis*, we presumed prejudice where grand jury investigators acted as advocates before the grand jury. This practice was antithetical to the "orderly development and presentation of evidence in a calm and dignified atmosphere," and "necessarily work[ed] to the prejudice of those under investigation." 183 Colo. at 241, 516 P.2d at 418. As a consequence, dismissal of the indictments was required.

Grand jury secrecy contributes in several ways to the grand jury's dual roles as an investigative body and a shield protecting individual citizens against oppressive and unfounded government prosecution. 1 W. LaFave & J. Israel, *Criminal Procedure* 628 (1984). As we stated in *Granbery v. District Court*, we maintain the secrecy of grand jury proceedings for the following reasons:

(1) To prevent the escape of those whose indictment may be contemplated;

(2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or

1. Crim.P. 52(a), captioned "Harmless Error," provides:

Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded.

their friends from importuning the grand jurors;

(3) to prevent subornation of perjury or tampering with the witnesses who may testify before a grand jury and later appear at the trial of those indicted by it;

(4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes;

(5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.

187 Colo. 316, 321, 531 P.2d 390, 393 (1975) (quoting *United States v. Procter & Gamble*, 356 U.S. 677, 681–82 n. 6, 78 S.Ct. 983, 986, n. 6, 2 L.Ed.2d 1077 (1958)). Thus, in addition to protecting the accused, the secrecy requirement ensures that the grand jury operates as an independent body, free from outside influence and prosecutorial overreaching. A harmless error analytical framework that leaves room for presumptions of prejudice based on fundamentally unfair deviations from the prescribed grand jury process would accommodate these objectives. *Cf. People v. Lewis*, 183 Colo. 236, 516 P.2d 416 (1973).

The difficulty of assessing the actual impact of fundamentally unfair breaches of prescribed grand jury procedure underscores the need for continued recognition of a presumption of prejudice in appropriate circumstances. Such presumption would lift from the accused the often insurmountable burden of discovering and proving prejudice in cases of egregious violations of grand jury procedure. Because the secrecy of the grand jury process itself can conceal both the existence and prejudicial impact of prosecutorial misconduct, the accused should be left some avenue of redress when serious prosecutorial misconduct rendering the proceedings fundamentally unfair comes to light but actual prejudice cannot be affirmatively demonstrated.

For these reasons, I would join in the majority's adoption of the harmless error standard only with the understanding that the prejudicial impact of breaching grand jury secrecy can and should be presumed in certain cases.

I would hold that the limited breaches of grand jury secrecy that occurred in this case were not so fundamentally unfair as to give rise to a presumption of prejudice. The harmless error standard should therefore be applied with respect to each of the breaches of secrecy at issue here. The case should be remanded to the trial court for application of that standard.

QUINN, C.J., and KIRSHBAUM, J., join in this concurrence and dissent.

