**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

**v.**

**John CERRONE, Defendant–Appellant.**

**No. 88CA1319.**

Colorado Court of Appeals, Div. III.

Oct. 10, 1991.

As Modified on Denial of Rehearing Nov. 14, 1991.

Certiorari Granted May 11, 1992.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Catherine P. Adkisson, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Neil MacFarlane, Westminster, for defendant-appellant.

Opinion by Judge MARQUEZ.

Defendant, John Cerrone, appeals a judgment of conviction entered upon a jury verdict finding him guilty of four violations of the Colorado Organized Crime Control Act (COCCA) and one count of pandering. We reverse and remand with directions.

In March 1986, following a lengthy investigation, defendant was indicted by a state grand jury sitting in the City and County of Denver. Predicated on defendant having engaged in pimping and pandering at several establishments in the Denver metropolitan area, the indictment charged him with five counts of violating COCCA, § 18–17–104, C.R.S. (1986 Repl.Vol. 8B), one count of pimping, § 18–7–206, C.R.S. (1986 Repl.Vol. 8B), and one count of pandering, § 18–7–203, C.R.S. (1986 Repl.Vol. 8B).

Prior to trial, defendant timely moved to dismiss the indictment alleging, among other things, that there was racial and economic discrimination in the selection of the grand jury including violation of the Colorado and United States Constitutions, and a violation of Colorado statutes including §§ 13–71–102 and 13–71–103, C.R.S. (1987 Repl.Vol. 6A).

At a hearing on the motion, the court heard testimony from the deputy attorney

general and other assistant attorneys general who assisted in the selection of the grand jury. However, upon objection by defense counsel, the court excluded the affidavit of the chief judge. The court then ruled that there was no unconstitutional discrimination or violation of the state jury selection statutes.

In so doing, the court made very specific findings that there was neither discrimination nor a violation of § 13–71–103 involved in the selection of the grand jurors. It found that the fact that certain groups of people did not serve on the grand jury was not a result or on account of their economic status or their race or national origin, but was a result of admitted efforts to achieve a jury capable of serving for a lengthy period of time and capable of understanding the complex issues involved.

Defendant now contends that the trial court should have dismissed the indictment because there was racial and economic discrimination in the selection of the grand jury in that no persons with Spanish surnames were on the list of jurors called for voir dire or on the grand jury and the government struck from the list of prospective grand jurors persons who appeared to work for an hourly wage. We conclude that defendant established a prima facie case of racial discrimination that was not rebutted; hence, the indictment should have been dismissed.

Section 13–73–101, C.R.S. (1987 Repl.Vol. 6A), regarding the impaneling of statewide grand juries, provides that:

"When the attorney general deems it to be in the public interest to convene a grand jury which has jurisdiction extending beyond the boundaries of any single county, he may petition the chief judge of any district court for an order in accordance with the provisions of this article. Said chief judge may, for good cause shown, order the impaneling of a state grand jury which shall have statewide jurisdiction. In making his determination as to the need for impaneling a state grand jury, the judge shall require a showing that the matter cannot be effectively handled by a grand jury im-

paneled pursuant to article 72 of this title, such a grand jury being referred to in this article as a 'county grand jury.' "

Section 13–73–103, C.R.S. (1987 Repl.Vol. 6A), regarding selection of state grand jurors, provides in part that: "The members of the state grand jury shall be selected by the chief judge with the advice of the attorney general...."

Section 13–71–102, C.R.S. (1987 Repl.Vol. 6A), in effect at the time pertinent here, provided that:

"It is the policy of this state that all persons selected for jury service shall be selected at random from a fair cross section of the population of the area served by the court, and that all qualified citizens shall have the opportunity ... to be considered for jury service...."

Furthermore, § 13–71–103, C.R.S. (1987 Repl.Vol. 6A) then provided that:

"A citizen shall not be excluded from jury service in this state on account of race, color, religion, sex, national origin, or economic status."

■ The basic principles prohibiting exclusion of persons from participation in jury service on account of their race are essentially the same for grand juries and for petit juries. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *Peters v. Kiff,* 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972); *see* §§ 13–73–104 and 13–71–110, C.R.S. (1987 Repl. Vol. 6A).

Here, it is not clear whether, in addition to alleging a violation of Colorado statutes, defendant is arguing that there was a Fourteenth Amendment equal protection violation, and a violation of defendant's Sixth Amendment right to an impartial jury because the jury was not comprised of a fair cross-section of the community. It does not appear that defendant on appeal is asserting violations of protections afforded by the Colorado Constitution.

■ Initially, we note that defendant does not challenge selection of the grand jury pool or venire. Therefore, we will address only the equal protection issue. Because the error raised here, a violation

of equal protection, is of constitutional dimension, a harmless error analysis is inapplicable. *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988); *Vasquez v. Hillery*, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986); *People v. Rickard*, 761 P.2d 188 (Colo.1988). Moreover, discrimination in the grand jury undermines the structural integrity of the criminal tribunal itself. *See Vasquez v. Hillery, supra.* Thus, a subsequent finding of guilt by a petit jury neither renders the error harmless nor does the issue become moot. *Cf. People v. Tyler*, 802 P.2d 1153 (Colo.App. 1990).

▮ It is presumed that jury selection has been exercised in a constitutionally permissible manner. This presumption may be rebutted by defendant's demonstration of a prima facie case of discrimination. If the court decides that a prima facie case has been established, the burden then shifts to the prosecution to rebut the inference that the jurors were excluded solely because of group membership. The prosecutor must articulate reasons for the exclusion that are unrelated to membership in a cognizable group and reasonably relevant to the particular case. *See Batson v. Kentucky, supra; Fields v. People*, 732 P.2d 1145 (Colo.1987); *People v. Staten*, 746 P.2d 1362 (Colo.App.1987).

Once the defendant makes the requisite showing, the burden shifts to the prosecution to explain adequately the racial exclusion. The prosecution must demonstrate that permissible racially neutral selection criteria and procedures have produced the result. *Batson v. Kentucky, supra; see Castaneda v. Partida*, 430 U.S. 482, 51 L.Ed.2d 498, 97 S.Ct. 1272 (1977).

▮ In so demonstrating, the prosecution cannot meet this burden on mere general assertions that its officials did not discriminate or that they properly performed their official duties. *Batson v. Kentucky, supra; Turner v. Fouche*, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970). Rather, it must give a clear and reasonably specific explanation of legit-

imate reasons for excluding the prospective jurors. *See Batson v. Kentucky, supra.*

▮ To establish a prima facie case, a defendant must first demonstrate that members of a cognizable group have been excluded. *See Batson v. Kentucky, supra; Fields v. People, supra.* But, he does not need to be a member of the excluded group to bring an equal protection claim. *See Powers v. Ohio*, 499 U.S. ——, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991).

▮ Spanish-surnamed persons clearly constitute a cognizable group. *Fields v. People, supra.*

The burden here then is on defendant to prove the existence of purposeful discrimination. And, he may make out a prima facie case of purposeful discrimination by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose. In deciding if the defendant has carried his burden, a court must undertake a sensitive inquiry into such circumstances and direct evidence of intent as may be available. And, in deciding whether the defendant has made the requisite showing, the court should consider all relevant circumstances. *Batson v. Kentucky, supra.*

▮ In making out a prima facie case, defendant is entitled to rely on the fact that the grand jury selection procedures here are susceptible of abuse and permit those to discriminate who are of a mind to discriminate. *See Batson v. Kentucky, supra; Castaneda v. Partida, supra.*

In Colorado, the statewide grand jury is selected after the attorney general petitions the court for the empanelment of the statewide grand jury pursuant to § 13–73–101.

The chief judge then has the discretion, pursuant to § 13–73–103, to make the final selection of the grand jurors who shall serve. This is done with the advice of the attorney general's office. Section 13–73–103.

▮ According to the evidence presented at the hearing on defendant's motion, after the decision was made to empanel the

grand jury, the state court administrator's office and the Denver Jury Commissioner were instructed to issue summons to 75 prospective jurors from each of the five counties that are represented on the grand jury: Adams, Arapahoe, Boulder, Denver, and Jefferson. This created a list of 375 persons who were selected for jury service completely at random. *See* § 13–73–103, C.R.S. (1987 Repl.Vol. 6A).

Each of the prospective jurors was sent a questionnaire that inquired about the prospective juror's name, age, education, experience, criminal history, jury experience, legal associations, and opinions. The questionnaire did not specifically inquire about race, color, religion, sex, national origin, or economic status.

Approximately 300 grand jury questionnaires were returned to the court. They were then reviewed by the attorney general and the court. The court, on the basis of the questionnaires and the recommendations of the attorney general, then made the final decision to exclude approximately 260 prospective jurors for a number of reasons and reduced the number of jurors actually summoned to voir dire to around 40, none of whom were Spanish-surnamed.

At the conclusion of voir dire, 12 jurors were selected, not more than three from any one county, and one alternate from each county. *See* § 13–73–103.

According to testimony at the hearing, the chief judge went through the 300 questionnaires from the list of prospective jurors and marked each excluded juror's name with a number representing the reason for exclusion. The numbers and their meanings were:

  3  other-undue hardship
  4  failure to appear
  7  no response
  8  non-resident
  9  not citizen
11  other
12  medical
15  undelivered.

In reducing the list of prospective jurors to 40, approximately 68 persons were excluded for reason number 11, "other." Of these "other" exclusions, five individuals had Spanish surnames. Four of the five indicated on their questionnaires that they had at least a high school education and one had less than a high school education. None of the five indicated having any problems that would interfere with their serving on the grand jury. No one with a Spanish surname was in the list of approximately 40 jurors called to voir dire or was on the final grand jury.

Because of the total exclusion of Spanish-surnamed persons from the group of prospective jurors brought to voir dire and, consequently, because of their exclusion from the grand jury, we agree with the trial court that defendant established a prima facie case of racial discrimination.

Accordingly, the burden shifted to the prosecution to rebut the inference of discrimination. *Batson v. Kentucky, supra.*

■ At the hearing, the deputy attorney general and other assistant attorneys general who assisted in the selection process testified that there was no racial discrimination, but they could not specifically say why the 68 prospective jurors marked "other" were excluded and testified that the chief judge did not share his reasons with them. Further, the chief judge did not testify at the hearing, and his affidavit was excluded.

Thus, the record reveals that the prosecution provided no specific explanation of the reasons for excluding the Spanish-surnamed jurors, and its burden cannot be met by the general assertions of the witnesses from the attorney general's office that there was no discrimination. Consequently, there was no evidence from which the trial court could conclude that the showing of discrimination had been rebutted.

Hence, a denial of equal protection in selection of the grand jury was shown, and defendant's convictions premised on the indictment issued by such body cannot stand.

Because of our resolution of this matter, we do not address defendant's remaining contentions.

Therefore, the judgment of conviction is reversed, and the cause is remanded with directions to quash the indictment.

TURSI and SILVERSTEIN *, JJ., concur.